Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Lauren M. Rosenberg (*pro hac vice*)
lrosenberg@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
375 Ninth Avenue
New York, New York 10001
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

Robert Salcido (SBN 139138)
rsalcido@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
4 Park Plaza, Suite 1900
Irvine, CA 92614
Telephone:  (949) 885-4100
Facsimile:  (949) 885-4101

*Attorneys for Defendant Epic Systems Corporation*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CureIS Healthcare, Inc.,<br><br>                              Plaintiff,<br><br>          v.<br><br>Epic Systems Corporation,<br><br>                              Defendant. | Case No.: 3:25-cv-04108-MMC<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO TRANSFER VENUE TO THE WESTERN DISTRICT OF WISCONSIN PURSUANT TO 28 U.S.C. § 1404(a)**<br><br>Hearing Date:  July 25, 2025<br><br>Time:  9:00 a.m.<br><br>Judge:  Hon. Maxine M. Chesney |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 25, 2025 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, San Francisco Courthouse located at 450 Golden Gate Avenue, San Francisco, CA 94102, in Courtroom 7 before the Honorable Maxine M. Chesney, Defendant Epic Systems Corporation ("Epic") will, and hereby does move for transfer of the above matter filed by Plaintiff CureIS Healthcare, Inc. ("CureIS").

Epic's motion is made pursuant to 28 U.S.C. § 1404(a). For the convenience of the parties and witnesses, and in the interest of justice, Epic requests that this case be transferred to the Western District of Wisconsin. Epic's motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declarations of Jennifer Peterson and Lauren A. Moskowitz, as well as the argument of counsel, the files and records in this action, any matters of which this Court may take judicial notice, and such oral and documentary evidence as may be presented to the Court.

Defendant's Motion to Transfer Venue                                      Case No. 3:25-cv-04108-MMC

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION ........................................................................................................1

FACTUAL BACKGROUND ..........................................................................................3

    A.    Epic Is Headquartered in and Conducts Business from Wisconsin. ........................3

    B.    CureIS Is a Minnesota Company, With No Presence in California. .......................3

    C.    The Crux of the Conduct at Issue and Relevant Evidence Is in Wisconsin. ...........4

LEGAL STANDARD ...................................................................................................7

ARGUMENT .............................................................................................................8

I.    Venue Is Proper in the Western District of Wisconsin. ...........................................8

II.    The Section 1404(a) Factors Weigh Strongly in Favor of Transferring Venue. .................8

    A.    CureIS's Choice of Forum Should Be Entitled to Little, If Any, Weight. ..............8

    B.    The Western District of Wisconsin Is a More Convenient Forum for the Parties. ...........................................................................................................10

    C.    The Western District of Wisconsin Is a More Convenient Forum for Witnesses. ......................................................................................................11

    D.    The Ease of Access to Evidence Weighs in Favor of Transfer. ...........................15

    E.    The Districts Are Equally Capable of Applying Applicable Law. .......................15

    F.    Feasibility of Consolidation of Other Claims Is Not Relevant. ...........................16

    G.    The Western District of Wisconsin Has a Local Interest in the Controversy. ........16

    H.    Relative Court Congestion Weighs in Favor of Transfer. ...................................17

CONCLUSION .........................................................................................................18

Defendant's Motion to Transfer Venue                    Case No. 3:25-cv-04108-MMC

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Trading Int'l., Inc. v. MCF Operating, LLC*,
   No. CV 19-5851-JFW(PLAx), 2019 WL 6139113 (C.D. Cal. Sept. 24, 2019).......................13

*Barroca v. United States*,
   No. 19-cv-00699-MMC, 2019 WL 5722383 (N.D. Cal. Nov. 5, 2019) ................................15

*Bhatia v. Silvergate Bank*,
   No. 23-cv-00667-JSC, 2023 WL 4937325 (N.D. Cal. Aug. 1, 2023)........................................8

*Bridgeport Enters., Inc. v. ValCom, Inc.*,
   No. CV 12-7159-GHK (FMOx), 2013 WL 12129388 (C.D. Cal. Mar. 29, 2013).................11

*Burgess v. HP, Inc.*,
   No. 16-CV-04784-LHK, 2017 WL 467845 (N.D. Cal. Feb. 3, 2017)......................................12

*Ctr. for Food Safety v. Vilsack*,
   No. C 11-00831-JSW, 2011 WL 996343 (N.D. Cal. Mar. 17, 2011) .......................................17

*Chesapeake Climate Action Network v. Exp.-Imp. Bank of the United States*,
   No. C 13-03532 WHA, 2013 WL 6057824 (N.D. Cal. Nov. 15, 2013) .................................10

*Clark v. VIP Petcare, LLC*,
   No. 22-cv-08935-AMO, 2023 WL 8459928 (N.D. Cal. Dec. 6, 2023) ..................................16

*Crittendon v. Muldrow*,
   No. 22-cv-09153-RS, 2025 WL 35046 (N.D. Cal. Jan. 6, 2025)...............................................7

*Easton v. Wells Fargo & Co.*,
   No. 20-cv-02193-HSG, 2020 WL 3639934 (N.D. Cal. July 6, 2020) ....................................10

*GLT Technovations, LLC v. Fownes Bros. & Co.*,
   No. 12-CV-00466 RMW, 2012 WL 1380338 (N.D. Cal. Apr. 20, 2012) ...............................9

*Halcon v. Hain Celestial Grp., Inc.*,
   No. 21-cv-02156-JST, 2021 WL 11701387 (N.D. Cal. Nov. 19, 2021)..................................15

*Hawkins v. Gerber Prods. Co.*,
   924 F. Supp. 2d 1208 (S.D. Cal. 2013) ................................................................................9, 15

*Hunt v. Ameritas Life Ins. Corps.*,
   No. 19-CV-01657-JSW, 2019 WL 7666755 (N.D. Cal. Sept. 25, 2019) ...............................16

*Hyundai Motor Co. v. Hyundai Tech. Grp., Inc.*,
   No. 23-cv-01410-JST, 2023 WL 11950485 (N.D. Cal. Sept. 11, 2023)...........................10, 11

*Kitzler v. Nelnet Servicing, LLC*,
   No. CV 22-6550-MWF (KS), 2022 WL 18284983 (C.D. Cal. Nov. 1, 2022) ........................15

*Lewis v. Sw. Airlines Co.*,
   No. 16-cv-00749-JCS, 2016 WL 3091998 (N.D. Cal. June 2, 2016)......................................10

*Lightspeed Aviation, Inc. v. Bose Corp.*,
No. 10-CV-239-BR, 2010 WL 3928624 (D. Or. Oct. 1, 2010) ................................17

*Luna v. Wal-Mart Transp., LLC*,
No. EDCV 18-331 PSG (KKx), 2018 WL 3569357 (C.D. Cal. July 11, 2018) .....................15

*Marshall v. Monster Beverage Corp.*,
No. 14-cv-02203-JD, 2014 WL 3870290 (N.D. Cal. Aug. 6, 2014) ........................17

*McGucken v. Lonely Planet Glob., Inc.*,
No. CV 22-5476-DMG (SKx), 2023 WL 4206107 (C.D. Cal. May 11, 2023) .....................11

*Park v. Dole Fresh Vegetables, Inc.*,
964 F. Supp. 2d 1088 (N.D. Cal. 2013) .............................................7, 15

*Rabinowitz v. Samsung Elecs. Am., Inc.*,
No. 14-cv-00801-JCS, 2014 WL 5422576 (N.D. Cal. Oct. 10, 2014)............................ passim

*Romoff v. Johnson & Johnson Consumer Inc.*,
No. 22-cv-75-LL-WVG, 2022 WL 3905301 (S.D. Cal. Aug. 26, 2022)................................17

*Schlesinger v. Collins*,
No. 19-cv-03483-EMC, 2019 WL 4674396 (N.D. Cal. Sept. 25, 2019) .....................15

*Skyriver Tech. Sols., LLC v. OCLC Online Comput. Libr. Ctr., Inc.*,
No. C 10-03305 JSW, 2010 WL 4366127 (N.D. Cal. Oct. 28, 2010) ...................16

*Sugarman v. Muddy Waters Cap., LLC*,
No. 19-cv-04248-MMC, 2021 WL 583220 (N.D. Cal. Feb. 16, 2021) ...................7

*Trueforce Glob. Servs., Inc. v. TruEffect, Inc.*,
No. C: 20-0080 SBA, 2020 WL 11231812 (N.D. Cal. June 1, 2020) .....................9

*U.S. ex rel. Ogawa v. Rieadco Corp.*,
No. C 10-04578 JW, 2011 WL 7293397 (N.D. Cal. Apr. 7, 2011) ........................15

*Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ. v. Varian Med. Sys.,
Inc.*, No. C-08-2973 MMC, 2008 WL 4279704 (N.D. Cal. Sept. 16, 2008) ....................7, 8

*Vu v. Ortho-McNeil Pharm., Inc.*,
602 F. Supp. 2d 1151 (N.D. Cal. 2009) .............................................8

**Statutes & Rules**

28 U.S.C. § 1331.............................................................................8

28 U.S.C. § 1332.............................................................................8

28 U.S.C. § 1391(b)(1) ...................................................................8

28 U.S.C. § 1404(a) ...............................................................1, 7, 8, 9

-iv-

Pursuant to 28 U.S.C. § 1404(a), Defendant Epic Systems Corporation ("Epic") moves to transfer this action brought by CureIS Healthcare, Inc. ("CureIS") to the United States District Court for the Western District of Wisconsin.

## INTRODUCTION

CureIS's Complaint contains seven kitchen-sink causes of action and reads like a bad spy novel, premised on the notion that the problems with CureIS's business can only be explained by Epic's alleged "interference". The Complaint is nothing more than a work of fiction. It is a desperate attempt by CureIS to lay blame for its own apparent failures—specifically, its stalled growth and the loss or deterioration of its relationships with some of its customers (who were already customers of Epic)—entirely at Epic's feet and refusing to look inward.

Many of the allegations lack credibility on their face. For example, CureIS alleges that Epic could not possibly develop a requested software feature without being engaged in a covert operation to obtain and misappropriate CureIS's trade secrets. To the contrary, Epic employs thousands of developers and is constantly innovating and releasing new versions of its enterprise software. Elsewhere, CureIS claims that any data security concerns that Epic allegedly raised about CureIS's products were "entirely pretextual" because one of CureIS's "primary selling points" is its ability to safekeep data. In jumping to a conclusion that suits its narrative, CureIS strategically ignores Epic's important commitments and obvious interest in safeguarding patient data and intellectual property. And according to the Complaint, any supposed "friction" CureIS experienced with Epic years ago must have been due to Epic violating the 21st Century Cures Act's prohibition on information blocking, even though those rules had not yet come into effect.

Epic licenses a full suite of enterprise electronic health record software that it is constantly building upon, improving, and iterating on in response to its customers' needs. If CureIS's products offer better functionality than Epic includes in the software it licenses, then customers will pay for CureIS's products. If not, they will not buy it. It is up to CureIS to prove its value. Implicit in the Complaint are two false premises. First is the notion that Epic should not be able to continue to innovate and enhance its own products. Second is that Epic should not be able to inform its own existing customers of what features and functionality they already have

-1-

licensed from Epic and what features will be added to or enhanced in that software in the future. This is apparently so companies like CureIS can avoid competition from Epic. CureIS's view of how the world should work is both absurd and antithetical to how competition works in the United States.

These and CureIS's other specious allegations attempt to explain away CureIS's failure to meet its customers' needs and to force Epic to subsidize that failure with a damages award. This is not the first time that a company has tried to blame a larger, well-established industry leader to explain away or solve its own shortcomings, whether in its products or business strategy. But Epic is not to blame for CureIS's failings. CureIS's claims are meritless and should be dismissed at the pleading stage, as will be explained in Epic's forthcoming motion to dismiss.

In this motion, Epic challenges the improper attempt by CureIS—a Minnesota corporation—to hail Epic, a Wisconsin corporation, into this Court in San Francisco to address Epic's alleged campaign to injure CureIS. The Northern District of California is far from the center of this litigation. The well-settled factors that govern transfer plainly support transfer of this case to the Western District of Wisconsin. Neither party is headquartered in the Northern District of California and neither party maintains a physical presence in it. The allegations in the Complaint concern Epic's purported conduct from within Epic's headquarters in Wisconsin and the purported harm to CureIS, a corporation based in Wisconsin's next-door neighbor, Minnesota. CureIS attempts to manufacture a connection to the Northern District of California by calling out (albeit under seal) some California health system customers CureIS complains it has lost—but of these, it alleges that only *one* of those customers resides in the Northern District of California. And at the same time, CureIS alleges that it has lost health system customers headquartered in other states throughout the country. The vast majority of the evidence, including both party and non-party witnesses, that will be relevant to this case are located outside of the Northern District of California. Indeed, the majority of relevant witnesses are located in the Western District of Wisconsin. There is no legitimate reason to litigate this case in the Northern District of California, where the courts are already burdened with many cases that do belong there. The Western District of Wisconsin has both an interest and the bandwidth to

Defendant's Motion to Transfer Venue                                    Case No. 3:25-cv-04108-MMC

handle litigation against a company headquartered there and employing more than 12,000 of its citizens.

**FACTUAL BACKGROUND**

A.     Epic Is Headquartered in and Conducts Business from Wisconsin.

At every moment in its nearly 50-year history, Epic has been a Wisconsin company. Founded in 1979, Epic has been headquartered in Wisconsin throughout its existence—first in Madison, Wisconsin and now at its current headquarters in Verona, Wisconsin. (Declaration of Jennifer Peterson ("Peterson Decl.") ¶¶ 3-4.) Epic currently employs more than 12,000 people, nearly all of whom work from Epic's headquarters and nearly all of whom are Wisconsin residents. (*Id.* ¶¶ 5-7.) Unlike other companies with expansive offices throughout the country, Epic maintains just two physical locations: Verona, Wisconsin and a much smaller location a few hours away in Rochester, Minnesota. (*Id.* ¶ 5.) At no point has Epic ever maintained an office or physical presence in California. (*Id.*)

Epic's employees and leadership teams are in Wisconsin when making critical decisions about the company, including decisions related to the adoption and implementation of all business strategies and policies, the development and sales of all products, facilitation of customer relationships, and communications and integration with any third-party systems. (*Id.* ¶ 9.) Wisconsin is also where Epic houses its documents relevant to the issues in this action. (*Id.* ¶ 8.) These documents may include, for example, communications with Epic's customers, customer records, communications with CureIS, corporate policies, product roadmaps, and marketing materials. (*Id.*) Epic does not store corporate documents in California. (*Id.*)

B.     CureIS Is a Minnesota Company, With No Presence in California.

CureIS is a corporation organized under the laws of Minnesota, with principal places of business in Woodbury, Minnesota and Tucson, Arizona. (Compl. ¶ 9.) CureIS does not allege any corporate presence in California, let alone in the Northern District of California. CureIS's Chief Executive Officer, Chris Sawotin, and its Chief Operating Officer, Bret Randolph—the only two CureIS employees identified by name in the Complaint—appear to be based out of either Minnesota or Wisconsin. (*See* Declaration of Lauren A. Moskowitz ("Moskowitz Decl.")

-3-

Ex. A (CureIS's business record profile from the Office of the Minnesota Secretary of State's website listing address for Mr. Sawotin in Woodbury, Minnesota); Ex. B (Mr. Randolph's LinkedIn Profile indicating his presence in St. Croix County, Wisconsin).)[1]  Mr. Sawotin also recently affirmed his presence in the Western District of Wisconsin when he executed a declaration in support of CureIS's Administrative Motion for Leave to File Under Seal Portions of Plaintiff's Complaint in Grantsburg, Wisconsin.  (*See* Dkt. No. 2-1 at 1.)

C.    The Crux of the Conduct at Issue and Relevant Evidence Is in Wisconsin.

To be clear, Epic vigorously contests the accusations in the Complaint.  The case of course is in its early stages and Epic has not yet completed an investigation of all of the individuals who may have relevant knowledge to defend against these claims.  But for purposes of this motion, it is clear that all of the alleged conduct emanated from Epic's headquarters in Wisconsin, where Epic employees work—in person—and where all of Epic's products, policies, and business strategies are developed and implemented.  (Peterson Decl. ¶¶ 6-7, 9.) Notwithstanding the cherry-picking of California-based customers to try to manufacture venue, Epic's conduct allegedly giving rise to the claims does not have any unique connection to California.  CureIS does not allege any Epic conduct in California or any in-person meetings between Epic and CureIS and/or any non-party.  The center of gravity of this case, to the extent the case proceeds at all, is Wisconsin.

For example, CureIS alleges facts concerning Epic's communications with its customers regarding CureIS.  (*E.g.*, Compl. ¶¶ 69-70, 73-74, 79-84.)  Unlike many software vendors that offer a "help desk" model for support, Epic assigns a dedicated support team for each customer, for each application.  (Peterson Decl. ¶ 13.)  Epic assigns each of its customers an Epic employee whom Epic refers to as a BFF ("Best Friend Forever"), who works with operational leads, project leads, and project sponsors.  (*Id.*)  The BFF partners with other members of a customer's Epic team to ensure organizations have the support they need to share the latest and greatest

---

[1] The exhibits accompanying the Moskowitz Declaration are proper subjects of judicial notice as they contain facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned".  Fed. R. Evid. 201(b).

developments.  (*Id.*)  Epic also assigns each of its customers a Technical Coordinator ("TC"), who is the primary contact for a customer's project leadership after applications are live.  (*Id.*)  Depending on the size and complexity of a customer, more than one TC may be assigned to a customer.  (*Id.*)  A TC is a member of the Technical Services ("TS") team and oversees live application support, integrated technical areas, and large projects such as upgrades.  (*Id.*)  Each of the Epic customers referenced in the Complaint—███████████████████████████████ ████████████████████████████████████████████████████, and ███████████████—has an Epic BFF and one or more TC.[2]  (*Id.* ¶¶ 15-21.)  Each of these Epic BFFs and TCs resides and works in Wisconsin.  (*Id.*)  CureIS also alleges Epic engaged in various "widespread" communications to its customers, including about the existence of a purported "Epic-First" policy (Compl. ¶¶ 5, 57), data-security risks presented by CureIS's products (*id.* ¶ 79), and promotion of existing and forthcoming product features (*id.* ¶ 98).  To the extent any such communications exist, they would have been created at Epic's headquarters in Wisconsin and disseminated through the aforementioned Epic-employed, Wisconsin-based BFFs or TCs. (Peterson Decl. ¶ 14.)  Thus, to the extent the relationship and communications between Epic and its customers will be at issue, Epic expects that the Wisconsin-based BFFs and TCs for each of the named customers would be among those called upon to testify.

CureIS also alleges facts concerning Epic's product features, including the development and promotion of those features.  (*E.g.*, Compl. ¶¶ 26, 29, 32-33, 39, 52, 55, 81, 95, 97-98.)  The design, development, and maintenance of Epic's software applications, including its Tapestry application for health plans, occurs at Epic's headquarters in Wisconsin.  (Peterson Decl. ¶¶ 10-

---

[2] As indicated in Epic's corresponding Administrative Motion to Consider Whether Another Party's Material Should Be Sealed ("Administrative Motion"), Epic has provisionally redacted herein all identifying information related to CureIS's customers named in the Complaint in accordance with Magistrate Judge Kim's prior order.  (*See* Dkt. No. 5.)  However, as previewed in Epic's Administrative Motion, Epic intends to file a motion to seek the unsealing of customer identifying information that Magistrate Judge Kim previously permitted, as Epic disputes CureIS's prior representation that it "goes to great lengths to keep the identities of its customers confidential" (Dkt. No. 2 at 2), as belied by historical versions of its own public website.

Defendant's Motion to Transfer Venue                    Case No. 3:25-cv-04108-MMC

11.)  Epic has nearly 400 employees on its Tapestry team, including more than 130 developers, and all of them work in-person at Epic's Wisconsin headquarters.  (*Id.* ¶ 11.)  These individuals are knowledgeable about Epic's Tapestry product, including the development of features, and related allegations.  (*Id.*)

CureIS also includes purported complaints over integration issues, including an allegation that "[b]etween February and July 2019, CureIS requested data and configuration details from Epic to integrate with Epic's 'Workbench' tools".  (*Id.* ¶ 45.)  Any such requests most likely would have been facilitated by Epic's Consultant Relations and/or Vendor Relations teams, who also all work at Epic's headquarters in Wisconsin.  (Peterson Decl. ¶ 22.)

CureIS also alleges that Epic adopted and imposes a so-called "Epic-first Policy".  (*E.g.*, Compl. ¶¶ 5, 39, 50, 57.)  Again, like with many of the allegations, Epic takes issue with the Complaint's characterization of this supposed policy, but for present purposes, any policy of this sort would have been developed at Epic's headquarters in Wisconsin and any witnesses who could speak to it would again be in Wisconsin.  (Peterson Decl. ¶¶ 9, 14.)  Moreover, according to the Complaint, this policy applies to "any entity utilizing Epic's EHR or RCM software" (Compl. ¶ 5)—which includes healthcare organizations in all 50 states (Peterson Decl. ¶ 12)—not just those customers named in the Complaint that CureIS handpicked to be concentrated in California.

The anticipated non-party witnesses—including the alleged current and prospective CureIS customers identified in the Complaint—are located throughout the country.  For example, one of the non-parties identified in the Complaint—███████—is headquartered in ██████, which is much closer to the Western District of Wisconsin than to the Northern District of California.  (*Id.* ¶ 15.)  Another non-party identified in the Complaint—████████—is headquartered in █████████.  (*Id.* ¶ 18.)  And even though certain of the non-parties identified in the Complaint—████████████████████████, and ███ [3]—are

_____

[3] The only conduct alleged in the Complaint to have a connection to the Northern District of California is Epic's alleged conduct directed towards ███████████ (*see* Compl. ¶¶ 11, 14), but ██████████ principal place of business is in ███████████, California, which is in the ████████

1  headquartered in ████ (*id.* ¶¶ 16-17, 19-21), ████████, and ████ are

2  outside of and hundreds of miles away from the Northern District of California.  (*Id.* ¶¶ 17, 19-

3  20.)

4  ## LEGAL STANDARD

5          "For the convenience of parties and witnesses, in the interest of justice, a district court

6  may transfer any civil action to any other district or division where it might have been brought".

7  28 U.S.C. § 1404(a).  "The purpose of Section 1404(a) is to 'prevent the waste of time, energy,

8  and money and to protect litigants, witnesses and the public against unnecessary inconvenience

9  and expense.'"  *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1093 (N.D. Cal.

10  2013) (quotation omitted).

11          The threshold question under Section 1404(a) is whether this action could originally have

12  been brought in the proposed transferee forum.  *See Univ. of Pittsburgh of Commonwealth Sys.*

13  *of Higher Educ. v. Varian Med. Sys., Inc.*, No. C-08-2973 MMC, 2008 WL 4279704, at *1 (N.D.

14  Cal. Sept. 16, 2008) (Chesney, J.).  Once it is established that the action could have been brought

15  in the proposed transferee forum, the Court must determine whether transfer is warranted "[f]or

16  the convenience of parties and witnesses" and "in the interest of justice".  *See* 28 U.S.C.

17  § 1404(a).  "In deciding whether transfer is appropriate, courts consider a number of factors,

18  including: '(1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the

19  witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable

20  law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and

21  (8) the relative court congestion and time of trial in each forum.'"  *Sugarman v. Muddy Waters*

22  *Cap., LLC*, No. 19-cv-04248-MMC, 2021 WL 583220, at *2 (N.D. Cal. Feb. 16, 2021)

23  (Chesney, J.) (quotation omitted).  "No single factor is dispositive, and a district court has broad

24  discretion to adjudicate motions for transfer on a case-by-case basis." *Crittendon v. Muldrow*,

25  No. 22-cv-09153-RS, 2025 WL 35046, at *2 (N.D. Cal. Jan. 6, 2025) (quotation omitted).

26  _____

27  District of California (Moskowitz Decl. Exs. D and E).  The only non-party named in the
    Complaint with a principal place of business in the Northern District of California appears to be

28  ████████.

1

## ARGUMENT

2

**I.    Venue Is Proper in the Western District of Wisconsin.**

3          An action could have been brought in the proposed forum "if the court (1) has personal

4   jurisdiction over all defendants, (2) has subject matter jurisdiction, and (3) is a proper venue for

5   the action".  *Univ. of Pittsburgh*, 2008 WL 4279704, at *1.  The Western District of Wisconsin

6   satisfies each of these requirements.

7          *First*, the Western District of Wisconsin has personal jurisdiction over Epic.  "A federal

8   court can exercise personal jurisdiction over defendants domiciled within the forum state at the

9   time the action commenced", which for corporations means its "state of incorporation and where

10  it has its principal place of business".  *Bhatia v. Silvergate Bank*, No. 23-cv-00667-JSC, 2023

11  WL 4937325, at *7 (N.D. Cal. Aug. 1, 2023).  Here, Epic is incorporated in Wisconsin and

12  maintains its principal place of business in Wisconsin.  (Compl. ¶ 10.)

13         *Second*, the Western District of Wisconsin has subject matter jurisdiction over this action.

14  The Complaint presents two grounds for subject matter jurisdiction:  (1) federal question

15  jurisdiction under 28 U.S.C. § 1331 based on the Lanham Act and Defend Trade Secrets Act

16  claims (*id.* ¶ 13); and (2) diversity jurisdiction under 28 U.S.C. § 1332 (*id.* ¶ 12).

17         *Third*, venue is proper in the Western District of Wisconsin.  Venue is proper in any

18  district "in which any defendant resides, if all defendants are residents of the State in which the

19  district is located".  28 U.S.C. § 1391(b)(1).  Here, the sole defendant, Epic, resides in the

20  Western District of Wisconsin.  Thus, venue is proper there.

21  **II.    The Section 1404(a) Factors Weigh Strongly in Favor of Transferring Venue.**

22         The relevant factors in assessing a motion to transfer under Section 1404(a) weigh

23  strongly in favor of transfer.  The Court should exercise its broad discretion to transfer this case

24  to the Western District of Wisconsin.

25         A.    <u>CureIS's Choice of Forum Should Be Entitled to Little, if Any, Weight.</u>

26         The deference ordinarily given to a plaintiff's choice of forum is "greatly reduced" where

27  "a plaintiff chooses to litigate away from its home forum".  *Univ. of Pittsburgh*, 2008 WL

28  4279704, at *2; *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009)

("Where a plaintiff does not reside in the forum, the Court may afford plaintiff's choice considerably less weight."). Here, CureIS does not reside in the Northern District of California, nor any other district within California.[4] (Compl. ¶ 9.) Accordingly, the deference given to CureIS's choice of forum should be greatly reduced.

Deference to a plaintiff's choice of forum may be even further reduced where the conduct giving rise to the claims occurred in a different forum. *Rabinowitz*, 2014 WL 5422576, at *4. Here, as discussed above, nearly all Epic employees reside in Wisconsin and the alleged conduct by Epic's employees—including any communications, dissemination or misappropriation of information, or enforcement of any policy—would have occurred within Wisconsin. (Peterson Decl. ¶¶ 7-14.) Where, as here, the crux of the case lies in the transferee forum, deference to CureIS's choice of forum should be even further reduced. *See, e.g.*, *Trueforce Glob. Servs., Inc. v. TruEffect, Inc.*, No. C: 20-0080 SBA, 2020 WL 11231812, at *5 (N.D. Cal. June 1, 2020) (finding the "nexus between th[e] action and California" minimal where the defendant's allegedly false promises emanated from Colorado, the only face-to-face meeting between the parties took place in Colorado, and the services underlying the subject matter were managed by an employee located in Colorado); *GLT Technovations, LLC v. Fownes Bros. & Co.*, No. 12-CV-00466 RMW, 2012 WL 1380338, at *4 (N.D. Cal. Apr. 20, 2012) (finding that the alleged use of proprietary information in the design and manufacture of the defendant's product would have taken place at defendant's offices in the non-forum state, meaning that the choice of forum was "entitled to only slight deference"); *Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1215 (S.D. Cal. 2013) (finding crux of case in false advertising action lied "where the marketing and manufacturing decisions were made", which was at defendant's headquarters).

---

[4] CureIS's only connection to California appears to be its attorneys, notably the same law firm (including lead counsel) who sued Epic in an unrelated matter on the other side of the country in the Southern District of New York. (Moskowitz Decl. Ex. C at 1.) But "it is well settled in this district that the location of counsel does not factor into whether a case should be transferred under § 1404(a)." *Rabinowitz v. Samsung Elecs. Am., Inc.*, No. 14-cv-00801-JCS, 2014 WL 5422576, at *4 (N.D. Cal. Oct. 10, 2014).

Defendant's Motion to Transfer Venue                    Case No. 3:25-cv-04108-MMC

Notably, "[a]s deference to a plaintiff's choice of forum decreases, a defendant's burden to upset the plaintiff's choice of forum also decreases." *Chesapeake Climate Action Network v. Exp.-Imp. Bank of the United States*, No. C 13-03532 WHA, 2013 WL 6057824, at *2 (N.D. Cal. Nov. 15, 2013).

      B.    <u>The Western District of Wisconsin Is a More Convenient Forum for the Parties.</u>

Neither Epic nor CureIS resides in the Northern District of California.  (Compl. ¶¶ 9-10, 12.)  Where neither party is a resident of the Northern District of California, "[c]ourts in this district have transferred actions involving corporate defendants to the state where they are headquartered".  *Lewis v. Sw. Airlines Co.*, No. 16-cv-00749-JCS, 2016 WL 3091998, at *4-5 (N.D. Cal. June 2, 2016) (where no party resided in the Northern District of California, granting motion to transfer to the Northern District of Texas where defendant was headquartered); *see also Hyundai Motor Co. v. Hyundai Tech. Grp., Inc.*, No. 23-cv-01410-JST, 2023 WL 11950485, at *3 (N.D. Cal. Sept. 11, 2023) (where no party resided in the Northern District of California, granting motion to transfer to the Central District of California where defendant was headquartered); *Rabinowitz*, 2014 WL 5422576, at *4 (where no party resided in the Northern District of California, granting motion to transfer to the District of New Jersey where defendant was headquartered).

Transferring this case to the Western District of Wisconsin would be far more convenient for Epic, which is headquartered in that district.  (Peterson Decl. ¶¶ 3, 24.)  Moreover, transfer to the Western District of Wisconsin would not shift any burden onto CureIS.  While plaintiff's "convenience is entitled to lesser weight here because [it] chose to sue in a forum where [it] does not reside", *Easton v. Wells Fargo & Co.*, No. 20-cv-02193-HSG, 2020 WL 3639934, at *3 (N.D. Cal. July 6, 2020), transfer to the Western District of Wisconsin would also be more convenient for CureIS in any event.  CureIS is a Minnesota corporation and maintains a principal place of business in Woodbury, Minnesota (Compl. ¶ 9)—a St. Paul suburb just across the Mississippi River from Wisconsin and ***less than ten miles*** from a county within the Western

Defendant's Motion to Transfer Venue          Case No. 3:25-cv-04108-MMC

District of Wisconsin (Moskowitz Decl. Ex. F).[5]  *See Rabinowitz*, 2014 WL 5422576, at *4 (finding that transfer from the Northern District of California to the District of New Jersey would not "impermissibly shift the burden" from defendant to plaintiff where the majority of plaintiffs lived closer to the District of New Jersey than the Northern District of California).

Given that neither party is a resident of the Northern District of California and transfer would be more convenient for both parties, this factor "strongly favors transfer".  *Bridgeport Enters., Inc. v. ValCom, Inc.*, No. CV 12-7159-GHK (FMOx), 2013 WL 12129388, at *2-3 (C.D. Cal. Mar. 29, 2013) ("With respect to the Parties, convenience strongly favors transfer because no Party is a resident of this district.").

C.    <u>The Western District of Wisconsin Is a More Convenient Forum for Witnesses.</u>

Witness convenience is accorded "significant weight" in determining whether to transfer. *McGucken v. Lonely Planet Glob., Inc.*, No. CV 22-5476-DMG (SKx), 2023 WL 4206107, at *2 (C.D. Cal. May 11, 2023).  "In assessing whether the convenience of the witnesses favors transfer, the Court must consider both the location and number of witnesses each side has and the relative importance of those witnesses."  *Id.*; *see also Hyundai Motor Co.*, 2023 WL 11950485, at *3 (instructing courts to consider the number of witnesses, as well as the nature and quality of their testimony when assessing convenience).  Here, the Western District of Wisconsin is a more convenient forum for the vast majority of party and non-party witnesses.

*First*, Epic anticipates that most witnesses will be Epic employees, all of whom reside in and work in the Western District of Wisconsin.  Specifically, Epic intends to rely on the testimony of at least the following Epic employee witnesses regarding the key allegations in the Complaint:

- The BFFs and TCs assigned to each of the seven customers named in the Complaint, who will testify about, among other things, Epic's alleged widespread

---

[5] CureIS's second principal place of business in Tucson, Arizona does not alter the convenience analysis as it is not located near either the transferee or transferor forum and, as discussed above, the two key CureIS witnesses are located in either Minnesota or Wisconsin (*see supra* at 3-4).

Defendant's Motion to Transfer Venue                    Case No. 3:25-cv-04108-MMC

communications with these customers underlying each of CureIS's causes of action. (Peterson Decl. ¶¶ 14-21.)  For example, the BFFs and TCs would be knowledgeable about (i) the existence and communication to customers of any purported "Epic-First policy" (*e.g.*, Compl. ¶¶ 5, 39, 50, 57); (ii) Epic's alleged "messaging" to customers that CureIS products present a data-security risk (*e.g.*, *id.* ¶¶ 79, 84, 120, 126); and (iii) Epic's alleged widespread messaging regarding the ability of Epic's products to replace third-party solutions (*e.g.*, *id.* ¶¶ 52, 55, 73, 76, 90, 97-98, 120, 157).

- Developers on Epic's Tapestry team who will testify about, among other things, the Tapestry features that CureIS alleges Epic falsely advertised are current or in-development features (*e.g.*, Compl. ¶¶ 26, 66, 69, 73, 76, 97-98) and how and when those features were developed internally at Epic.  (Peterson Decl. ¶ 11.)  For example, a developer on Epic's Tapestry team knowledgeable about Epic's development of features for ███████ that form part of the basis for CureIS's trade secret claim (*e.g.*, Compl. ¶¶ 89-91) will testify about Epic's internal development efforts, the original request from ███████, and any timelines that Epic committed to related to the project.  (Peterson Decl. ¶ 11.)

- Members of Epic's Technical Communications team who will testify about, among other things, the creation and distribution of promotional materials that communicate the vast number of functionalities that are included in a customer's license agreement, which form part of the purported basis for CureIS's unfair competition and false advertising claims (*e.g.*, Compl. ¶¶ 97-98, 143, 157).  (Peterson Decl. ¶ 23.)

- Members of Epic's Consultant Relations and/or Vendor Relations teams who will testify about, among other things, CureIS's alleged requests to integrate with Epic technology and Epic's alleged denial of such requests that form part of the purported basis for each of CureIS's causes of action (*e.g.*, Compl. ¶¶ 44-46, 59-62, 65, 70, 74, 78).  (Peterson Decl. ¶ 22.)

Given that each of these employees are located in the Western District of Wisconsin, transfer to that district would be significantly more convenient for these witnesses.  *Burgess v.*

-12-

*HP, Inc.*, No. 16-CV-04784-LHK, 2017 WL 467845, at *9 (N.D. Cal. Feb. 3, 2017) (recognizing transfer would increase convenience for a defendant where none of the potential defendant employee witnesses were located in California and at least some were located in the proposed transferee district).

*Second*, litigating in the Western District of Wisconsin would also be significantly more convenient for key CureIS employee witnesses. The only two CureIS employees referenced in the Complaint are Chris Sawotin, CureIS's Chief Executive Officer (*see* Compl. ¶¶ 61-64, 76), and Bret Randolph, CureIS's Chief Operating Officer (*see* Compl. ¶¶ 61, 71), both of whom appear to reside in either Minnesota or Wisconsin. (*See* Moskowitz Decl. Exs. A, B.) Mr. Sawotin also recently affirmed his presence in the Western District of Wisconsin when he executed a declaration in support of CureIS's Motion for Leave to File Under Seal Portions of Plaintiff's Complaint in Grantsburg, Wisconsin. (*See* Dkt. No. 2-1 at 1.) These individuals will be called to testify about the allegations in the Complaint, including but not limited to those specifically mentioning them by name (*see* Compl. ¶¶ 61-64, 71, 76), as well as the alleged harm to CureIS as a result of the claims it is asserting. The Western District of Wisconsin is far more convenient to these witnesses—whether they are found in Minnesota or Wisconsin—than the Northern District of California.

Because the vast majority of party witnesses are located closer to the Western District of Wisconsin, transfer would be substantially more convenient. *See Am. Trading Int'l., Inc. v. MCF Operating, LLC*, No. CV 19-5851-JFW(PLAx), 2019 WL 6139113, at *2 (C.D. Cal. Sept. 24, 2019) (finding transfer appropriate where party witnesses were largely all located closer to proposed transferee district).

*Third*, anticipated non-party witnesses—including Epic and CureIS mutual customers—are located throughout the country and are not concentrated in the Northern District of California. For example, ██████, one of the non-parties identified in the Complaint, is headquartered in ████. (Peterson Decl. ¶ 15.) Litigating in the Western District of Wisconsin would be significantly more convenient for ██████ witnesses than the Northern District of California. One such witness who will testify is ██████, one of the ██████ employees

-13-

mentioned in the Complaint (Compl. ¶¶ 61-65, 127), who according to her own signature block in the Complaint is based in a northern suburb of ██████████—less than a ████████ drive from the Western District of Wisconsin courthouse (*id.* ¶ 61).  Epic also anticipates that other ██████ employees based in ██████ where ██████ is headquartered will testify, including, for example, the unnamed ██████ employee referenced in the Complaint who purportedly told CureIS in August 2024 that "██████ could no longer use any of CureIS's solutions, including EnrollmentCURE, because Epic considered CureIS a direct competitor and would not allow ██████ to use the product of its choice".  (*Id.* ¶ 46.)

Numerous other non-parties identified in the Complaint are located outside the Northern District of California, including ██████, which is headquartered in ██████.[6]  (Peterson Decl. ¶ 18.)  Moreover, even three of the California-based non-parties identified in the Complaint—██████████████, and ██████—are based hundreds of miles away from the Northern District of California (*id.* ¶¶ 17, 19-20), which does not make the Northern District of California more convenient than anywhere else.

CureIS's Complaint also implies that other non-parties may be at issue.  (*See* Compl. ¶ 39 (alleging that the Complaint reflects only "representative examples" of "those of which CureIS is currently aware, but Epic's behavior reflects a broader scheme aimed at impacting CureIS's relations with many other current and prospective customers").)  Those non-parties could be located throughout the country, especially given CureIS's public statement that it "serves clients nationwide".  (Moskowitz Decl. Ex. G at 1 (CureIS Press Kit).)

Regardless of their location, Epic is willing to take all appropriate steps to minimize the burden on all non-party witnesses, including traveling to those witnesses for depositions.  As such, these witnesses will not be prejudiced by a change in venue, particularly as these depositions will be videotaped and could be used as testimony at trial to the extent necessary.

---

[6] While Epic anticipates that any anticipated ██████ witnesses would be located outside the Northern District of California, given the sparse and conclusory assertions in the Complaint regarding ██████ (*see* Compl. ¶¶ 111, 118), Epic has been unable to identify prospective ██████ witnesses at this stage.

1    *See, e.g.*, *Luna v. Wal-Mart Transp., LLC*, No. EDCV 18-331 PSG (KKx), 2018 WL 3569357,

2    at *4 (C.D. Cal. July 11, 2018) ("[T]he ability to compel videotaped depositions has been

3    deemed a suitable substitute that limits this factor's import.") (quotation omitted).  As a result,

4    this factor continues to favor transfer to the Western District of Wisconsin, which as discussed

5    above is substantially more convenient for the vast majority of party witnesses and non-party

6    ███████ witnesses.

7         D.    The Ease of Access to Evidence Weighs in Favor of Transfer.

8         The location of evidence is also a relevant factor in a convenience and fairness analysis.

9    *See Halcon v. Hain Celestial Grp., Inc.*, No. 21-cv-02156-JST, 2021 WL 11701387, at *4 (N.D.

10   Cal. Nov. 19, 2021).  "Although developments in electronic conveyance have reduced the cost of

11   document transfer somewhat, costs of litigation can still be substantially lessened if the venue is

12   in the district in which most of the documentary evidence is stored."  *Park*, 964 F. Supp. 2d at

13   1095; *see also Schlesinger v. Collins*, No. 19-cv-03483-EMC, 2019 WL 4674396, at *4 (N.D.

14   Cal. Sept. 25, 2019).

15        Here, all relevant evidence in Epic's possession, including physical and electronically

16   stored information, is located within or accessible from the Western District of Wisconsin where

17   Epic is headquartered and where all relevant Epic employees are located.  (Peterson Decl. ¶¶ 3,

18   6-8.)  Therefore, this factor weighs in favor of transfer.  *See, e.g.*, *Barroca v. United States*,

19   No. 19-cv-00699-MMC, 2019 WL 5722383, at *4 (N.D. Cal. Nov. 5, 2019) (Chesney, J.)

20   (holding that this factor "weighs in favor of transfer" where "considerably more sources of proof

21   are likely to be readily accessible in" the transferee forum); *Halcon*, 2021 WL 11701387, at *4

22   (holding that this factor "supports transfer" where "the bulk of the evidence is stored" in the

23   transferee forum); *Kitzler v. Nelnet Servicing, LLC*, No. CV 22-6550-MWF (KS), 2022 WL

24   18284983, at *4 (C.D. Cal. Nov. 1, 2022); *Hawkins*, 924 F. Supp. 2d at 1216; *U.S. ex rel. Ogawa

25   v. Rieadco Corp.*, No. C 10-04578 JW, 2011 WL 7293397, at *4 (N.D. Cal. Apr. 7, 2011).

26        E.    The Districts Are Equally Capable of Applying Applicable Law.

27        Where, like here, the plaintiff asserts claims based on both federal and state law, courts

28   routinely conclude that this factor is neutral as federal district courts are fully capable of

-15-

applying all federal and state laws. *See, e.g.*, *Clark v. VIP Petcare, LLC*, No. 22-cv-08935-AMO, 2023 WL 8459928, at *5 (N.D. Cal. Dec. 6, 2023) (finding this factor neutral as "federal judges routinely apply the law of a State other than the State in which they sit") (quoting *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 67 (2013)).

Here, while CureIS brings California state law claims in addition to the federal claims, federal district courts outside of California are "fully capable of adjudicating claims that arise under California law". *Skyriver Tech. Sols., LLC v. OCLC Online Comput. Libr. Ctr., Inc.*, No. C 10-03305 JSW, 2010 WL 4366127, at *5 (N.D. Cal. Oct. 28, 2010).

F.    Feasibility of Consolidation of Other Claims Is Not Relevant.

Because there is no other pending litigation involving the parties in the Western District of Wisconsin, "[t]his factor is not applicable and does not weigh either for or against transfer". *Rabinowitz*, 2014 WL 5422576, at *7.

G.    The Western District of Wisconsin Has a Local Interest in the Controversy.

A district "has an interest in deciding controversies involving businesses headquartered there, and that employ a substantial number of its citizens." *Id.* (quoting *Bloom v. Express Servs., Inc.*, No. C 11-00009 CRB, 2011 WL 1481402, at *5 (N.D. Cal. Apr. 19, 2011) (finding that the defendant's district had a "more substantial interest" in the controversy because it had "an interest in deciding controversies involving businesses headquartered there, and that employ a substantial number of its citizens")).

Here, the Western District of Wisconsin has an interest in adjudicating CureIS's claims because Epic is headquartered there and employs more than 12,000 of its citizens.  (Peterson Decl. ¶¶ 4-6.)  By contrast, the Northern District of California has no particular local interest in adjudicating CureIS's claims because neither Epic nor CureIS is a California corporation, and thus, California has "little interest in keeping the litigation in this state to deter future wrongful conduct". *Hunt v. Ameritas Life Ins. Corps.*, No. 19-CV-01657-JSW, 2019 WL 7666755, at *4 (N.D. Cal. Sept. 25, 2019) (quotation omitted).  California courts have concluded that any interest in applying California law to residents of foreign states is "attenuated at best", meaning that CureIS's decision to assert California unfair competition law and false advertising claims

-16-

1  does not create any local interest for the Northern District of California.  *See Romoff v. Johnson*

2  *& Johnson Consumer Inc.*, No. 22-cv-75-LL-WVG, 2022 WL 3905301, at *6 (S.D. Cal.

3  Aug. 26, 2022) (holding that "this factor favors transfer" where "the primary focus of th[e]

4  action is the development and marketing of Defendant's products in the Eastern District of

5  Pennsylvania" and Pennsylvania has an "interest in preventing fraudulent practices by resident

6  businesses" even though California had an "interest in protecting its consumers"); *see also*

7  *Lightspeed Aviation, Inc. v. Bose Corp.*, No. 10-CV-239-BR, 2010 WL 3928624, at *4 (D. Or.

8  Oct. 1, 2010) (recognizing that where defendant sold its product in multiple districts, trial in

9  district where jurors "have little or 'no relation to the litigation'" would impose a greater burden

10  on district's jury pool).  Accordingly, this factor also weighs in favor of transfer.

11    H.    Relative Court Congestion Weighs in Favor of Transfer.

12    "The relative docket congestion of the competing forums is also relevant to the Court's

13  decision on whether to transfer."  *Ctr. for Food Safety v. Vilsack*, No. C 11-00831-JSW, 2011

14  WL 996343, at *8 (N.D. Cal. Mar. 17, 2011).  "The key inquiry in docket congestion is 'whether

15  a trial may be speedier in another court because of its less crowded docket.'"  *Marshall v.*

16  *Monster Beverage Corp.*, No. 14-cv-02203-JD, 2014 WL 3870290, at *3 (N.D. Cal. Aug. 6,

17  2014) (quotation omitted).  "To measure congestion, courts compare the transferee and transferor

18  district courts' 'median time from filing to disposition of trial.'"  *Id.* (quoting *Costco Wholesale*

19  *Corp. v. Liberty Mutual Ins. Co.*, 472 F. Supp. 2d 1183, 1196 (S.D. Cal. 2007)); *see Rabinowitz*,

20  2014 WL 5422576, at *8 (taking judicial notice of median district court disposition and trial

21  times).

22    Here, the relative speed of the docket favors the Western District of Wisconsin.  Civil

23  cases in the Western District of Wisconsin, on average, took 7.3 months from filing to

24  disposition in the 12-month period ending March 31, 2025, while the disposition time in the

25  Northern District of California was 20.5 months.  (Moskowitz Decl. Ex. H.)  Moreover, civil

26  cases in the Western District of Wisconsin, on average, took 29.0 months from filing to trial in

27

28

Defendant's Motion to Transfer Venue                    Case No. 3:25-cv-04108-MMC

1   the 12-month period ending March 31, 2024, while cases in the Northern District of California

2   took 49.9 months.[7]  (*Id.*)  Accordingly, this factor favors transfer.

3                                          **CONCLUSION**

4           For the foregoing reasons, Epic respectfully requests that the Court grant its motion and

5   transfer this action to the Western District of Wisconsin.

6    Dated:  June 17, 2025                          Respectfully submitted,

7

8                                                   By:   */s/ Lauren A. Moskowitz*

9                                                   **CRAVATH, SWAINE & MOORE LLP**

10                                                  Lauren A. Moskowitz (*pro hac vice*)
                                                    lmoskowitz@cravath.com
11                                                  Lauren M. Rosenberg (*pro hac vice*)
                                                    lrosenberg@cravath.com
12                                                  375 Ninth Avenue
                                                    New York, New York 10001
13                                                  Telephone:  (212) 474-1000
                                                    Facsimile:  (212) 474-3700
14

15                                                  **AKIN GUMP STRAUSS HAUER & FELD
                                                    LLP**
16
                                                    Robert Salcido (SBN 139138)
17                                                  rsalcido@akingump.com
                                                    4 Park Plaza, Suite 1900
18                                                  Irvine, California 92614
                                                    Telephone:  (949) 885-4100
19                                                  Facsimile:  (949) 885-4101
20

21                                                  *Attorneys for Defendant Epic Systems
                                                    Corporation*
22

23

24

25

26

27   ────────────────────
       [7] Statistics for this metric were not available for the 12-month period ending March 31, 2025
28   in the Western District of Wisconsin.  (*See* Moskowitz Decl. Ex. H.)

                                                 -18-