Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Lauren M. Rosenberg (*pro hac vice*)
lrosenberg@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
375 Ninth Avenue
New York, New York 10001
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

Robert Salcido (SBN 139138)
rsalcido@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
4 Park Plaza, Suite 1900
Irvine, CA 92614
Telephone:  (949) 885-4100
Facsimile:  (949) 885-4101

*Attorneys for Defendant Epic Systems Corporation*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CureIS Healthcare, Inc.,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>Epic Systems Corporation,<br><br>　　　　　　　　Defendant. | Case No.: 3:25-cv-04108-MMC<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO PARTIALLY UNSEAL CUREIS HEALTHCARE, INC.'S COMPLAINT**<br><br>Hearing Date:  August 8, 2025<br><br>Time:  9:00 a.m.<br><br>Judge:  Hon. Maxine M. Chesney |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 8, 2025 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, San Francisco Courthouse located at 450 Golden Gate Avenue, San Francisco, CA 94102, in Courtroom 7 before the Honorable Maxine M. Chesney, Defendant Epic Systems Corporation will, and hereby does move to partially unseal CureIS Healthcare, Inc.'s Complaint pursuant to Civil Local Rule 79-5(g)(3).

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ....................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ....................................................................................................................1

FACTUAL BACKGROUND ...................................................................................................2

     A.    CureIS Publicly Disclosed Its Customer Names for Years. ....................................2

     B.    Despite CureIS's Prior Disclosures, It Now Seeks to Reverse Course....................3

LEGAL STANDARD................................................................................................................5

ARGUMENT.............................................................................................................................6

I.    CureIS Fails to Show Compelling Reasons to Seal Customer Information. .......................6

     A.    CureIS Publicly Disclosed Customer Names It Now Seeks to Seal. ......................7

     B.    CureIS's Generalized Assertions Supporting Sealing Are Inadequate....................8

II.   The Public Interest Supports Unsealing CureIS's Complaint............................................12

CONCLUSION........................................................................................................................13

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Buhl v. Abbott Labs.*,
　No. 17-cv-04244-NC, 2019 WL 13248007 (N.D. Cal. Feb. 19, 2019) ...................................9

*CreAgri, Inc. v. Pinnaclife Inc.*,
　No. 5:11-CV-06635-LHK, 2014 WL 27028 (N.D. Cal. Jan. 2, 2014) ..................................13

*Ctr. for Auto Safety v. Chrysler Grp., LLC*,
　809 F.3d 1092 (9th Cir. 2016) ...............................................................................................5

*Dangaard v. Instagram*,
　No. C 22-01101 WHA, 2023 WL 4869234 (N.D. Cal. July 31, 2023) ................................11

*Digital Reg of Texas, LLC v. Adobe Sys. Inc.*,
　No. C 12-1971 CW, 2013 WL 4049686 (N.D. Cal. Aug. 8, 2013) ......................................12

*Erickson v. Nebraska Machinery Co.*,
　No. 15-cv-01147-JD, 2015 WL 4089849 (N.D. Cal. July 6, 2015).......................................2

*Fairbairn v. Fidelity Invs. Charitable Gift Fund*,
　No. 18-cv-04881-JSC, 2020 WL 6788864 (N.D. Cal. Mar. 2, 2020).....................................8

*Flextronics Int'l USA, Inc. v. Murata Mfg. Co.*,
　No. 5:19-cv-00078-EJD, 2019 WL 13554029 (N.D. Cal. Dec. 16, 2019) ...........................12

*Gjovik v. Apple Inc.*,
　No. 23-cv-04597-EMC, 2025 WL 637931 (N.D. Cal. Feb. 27, 2025) ..................................2

*In re Google Inc. Gmail Litig.*,
　No. 13-MD-02430-LHK, 2014 WL 10537440 (N.D. Cal. Aug. 6, 2014) ..............................7

*In re Google Location Hist. Litig.*,
　514 F. Supp. 3d 1147 (N.D. Cal. 2021) .................................................................................5

*In re Twitter Inc. Sec. Litig.*,
　No. 16-cv-05314-JST, 2020 WL 2519888 (N.D. Cal. May 18, 2020) ...............................7, 9

*Kamakana v. City and Cnty. of Honolulu*,
　447 F.3d 1172 (9th Cir. 2006) ..........................................................................................5, 10

*Makaeff v. Trump Univ., LLC*,
　715 F.3d 254 (9th Cir. 2013) .................................................................................................3

*Mezzadri v. Med. Depot, Inc.*,
　No. 14-CV-2330-AJB-DHB, 2015 WL 12564223 (S.D. Cal. Dec. 18, 2015) .....................12

*Open Text S.A. v. Box, Inc.*,
　No. 13-cv-04910-JD, 2014 WL 7368594 (N.D. Cal. Dec. 26, 2014).............................6, 8, 9

-iv-

*Parziale v. HP, Inc.*,
    No. 5:19-cv-05363-EJD, 2020 WL 5798274 (N.D. Cal. Sept. 29, 2020)................................2

*Realtek Semiconductor Corp. v. MediaTek, Inc.*,
    769 F. Supp. 3d 1067 (N.D. Cal. 2025) ....................................................................5, 6, 12

*Simpson Strong-Tie Co. Inc. v. MiTek Inc.*,
    No. 20-cv-06957-VKD, 2023 WL 9187547 (N.D. Cal. Dec. 15, 2023)..............................7, 9

*Smith v. Diaz*,
    No. 20-cv-04335-HSG, 2025 WL 948117 (N.D. Cal. Mar. 28, 2025) ....................................11

*Stemmelin v. Matterport, Inc.*,
    No. C 20-04168 WHA, 2022 WL 1422567 (N.D. Cal. May 5, 2022)..................................6, 8

*Tesla, Inc. v. McKechnie Vehicle Components USA, Inc.*,
    No. 21-cv-01962-BLF, 2021 WL 6332531 (N.D. Cal. Apr. 1, 2021) ......................................11

*U.S. Ethernet Innovations, LLC v. Acer*,
    No. C 10-3724 CW, 2013 WL 4426507 (N.D. Cal. Aug. 14, 2013) ........................................12

*Weiss v. Sovereign Nation of Afghanistan*,
    No. 23-cv-02827-HSG, 2023 WL 8530506 (N.D. Cal. Nov. 21, 2023)..................................13

*Yates v. Cheeseburger Rests., Inc.*,
    No. 2:22-cv-01081-DAD-DB, 2023 WL 4747431 (E.D. Cal. July 25, 2023)..........................9

**Statutes & Rules**

28 U.S.C. § 1404(a) ............................................................................................................................4

Pursuant to Civil Local Rule 79-5(g)(3), Defendant Epic Systems Corporation ("Epic") moves to unseal portions of CureIS Healthcare, Inc.'s ("CureIS") Complaint that are presently redacted.

## INTRODUCTION

To overcome the strong presumption in favor of public access to court materials and shield the specifics of its allegations from the public, CureIS must meet the high bar of showing compelling reasons supported by specific factual findings that outweigh the public's right of access. CureIS has not done so.

*First*, CureIS has not established compelling reasons that the specific customer names in the Complaint should be sealed. As an initial matter, CureIS's stated rationale for sealing—that its contractual relationships with its customers are confidential—is contradicted by its prior public statements advertising the names of its customers on its website and social media. As part of CureIS's unwarranted crusade against Epic for imagined wrongs, CureIS sought to seal portions of its Complaint identifying mutual CureIS and Epic customers on the grounds that "CureIS maintains the confidentiality of such information at all times". That representation was false. For many years prior to filing this action, CureIS publicly disclosed on its website and elsewhere (*e.g.*, Twitter) the identities of certain customers—including several of the customers named in the Complaint whose identity CureIS now has tried to conceal. Because CureIS's stated rationale to justify sealing is belied by its own conduct, CureIS has not demonstrated that sealing of its customer names is appropriate. Moreover, even if CureIS did not falsely represent that it kept confidential each of the customer names, unsealing the Complaint would still be warranted. To justify shielding information from public view, CureIS must show 'compelling reasons' for sealing, supported by specific individualized facts and arguments. CureIS has not done so, and accordingly cannot demonstrate that the basic information at issue here meets the strict compelling reasons standard.

*Second*, the public interest in understanding the nature of the claims here outweighs any interest in keeping that information secret. Indeed, CureIS has been actively promoting this litigation in the press in an attempt to damage Epic with its false allegations, while

simultaneously contending that the actual facts underlying its Complaint are protected from public disclosure. Unsealing the customer identifying information in the Complaint to provide critical details about the specific customers Epic is alleged to have interfered with will allow the public, including CureIS's and Epic's mutual customers, to better evaluate CureIS's claims, as they have a well-established right to do. Epic trusts that when the facts of this case are made public, CureIS's Complaint will be exposed for nothing more than the fiction that it is.

Epic respectfully requests that this Court unseal the portions of the Complaint that redact customer names and identifying information.

## FACTUAL BACKGROUND

A.  <u>CureIS Publicly Disclosed Its Customer Names for Years.</u>

From at least ▇▇▇▇ to as recently as ▇▇▇▇, CureIS publicly disclosed the identity of several of its customers—including several of the customers named in the Complaint—on its own website.[1] (Moskowitz Decl. ¶¶ 3-10, Exs. A-H.)  For example, in ▇▇▇▇, CureIS's website disclosed CureIS's relationship with ▇▇▇▇ and ▇▇▇▇, explaining that ▇▇▇ "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" and ▇▇▇ "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇". (*Id.* ¶ 3, Ex. A; *see also id.* ¶ 7, Ex. E (describing ▇▇▇ use of CureIS's

---

[1] Prior versions of CureIS's website and social media were collected from an internet archive called the "Wayback Machine". (Moskowitz Decl. ¶¶ 3-11, Exs. A-I.) The Wayback Machine is an "online digital archive of web pages" that is "run by the Internet Archive, a nonprofit library in San Francisco, California". *Gjovik v. Apple Inc.*, No. 23-cv-04597-EMC, 2025 WL 637931, at *8 (N.D. Cal. Feb. 27, 2025) (quotation omitted). Courts routinely take judicial notice of historic digital webpages procured through Wayback Machine. *Id.* at *8-10 (taking judicial notice of content from Wayback Machine, including "not only the documents at issue but also the date the documents were publicly available"); *see also Parziale v. HP, Inc.*, No. 5:19-cv-05363-EJD, 2020 WL 5798274, at *3 (N.D. Cal. Sept. 29, 2020) (taking judicial notice of webpage from Wayback Machine); *Erickson v. Nebraska Machinery Co.*, No. 15-cv-01147-JD, 2015 WL 4089849, at *1, n. 1 (N.D. Cal. July 6, 2015) ("Courts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

1  EnrollmentCURE product).) [2] CureIS's website also encouraged visitors to "███████
2  ███" for additional information about CureIS's work with ███████████, among other
3  customers. (*Id.* ¶ 3, Ex. A.) CureIS also identified and described CureIS's relationship with
4  other customers not named in the Complaint, including ████████████████████
5  ██████████████████████████████. (*Id.*)
6       CureIS has also disclosed specific customer names in social media posts and demo
7  presentations, which has also included several of the customers named in the Complaint. For
8  example, CureIS advertised its "████████████████████████████████
9  █████████████████████" in a Twitter (now X) post active as of at least ███████
10  ██. (*Id.* ¶ 11, Ex. I.) And in a publicly available CureIS presentation last updated by CureIS's
11  ██████████████ on ██████████, CureIS provides information about its recovery
12  software, including a slide with a "case study" about ████████████. (*Id.* ¶ 12, Ex. J
13  (Slide 5).) Specifically, the slide states that "█████████████████████████
14  █████████████████████████████████████" and that CureIS's
15  product "████████████████████████████████". (*Id.*)
16      B.    <u>Despite CureIS's Prior Disclosures, It Now Seeks to Reverse Course.</u>
17       Notwithstanding that CureIS had publicly disclosed its own customer names for years,
18  when CureIS initiated this litigation on May 12, 2025, it filed an administrative motion seeking
19  to file portions of the Complaint under seal (Dkt. No. 2 ("Sealing Motion")) and an
20  accompanying declaration from CureIS's Chief Executive Officer ("CEO"), Chris Sawotin (Dkt.
21  No. 2-1 ("Sawotin Decl.")). The Complaint provisionally redacted the following categories of
22  information: (i) names of CureIS customers or prospective customers (*see*, *e.g.*, Compl. ¶¶ 11,
23  33, 40, 111); (ii) names and email addresses of employees of certain of those customers (*id.*

---

25  [2] Epic requests that this Court take judicial notice of the websites cited in the Moskowitz
26  Declaration for purposes of assessing what information was in the public realm, which Courts regularly do. *See*, *e.g.*, *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 259 n.2 (9th Cir. 2013)
27  (granting request to take judicial notice of book collaborations, newspaper and magazine articles, and websites "to indicate what was in the public realm at the time, not whether the contents of
28  those articles were in fact true").

¶¶ 49, 61-67, 70-72, 76, 93, 95, 127);[3] (iii) the physical address of one customer (*id.* ¶ 61); and (iv) a single sentence of a proposal that CureIS sent to a customer that CureIS described in the Complaint as a "confidentiality notice[]" (*id.* ¶ 89).[4]

      In its Sealing Motion, CureIS asserted that the confidential information it sought to seal "relates to the existence and terms of software subscription agreements between CureIS and seven of its customers" and that "CureIS maintains the confidentiality of such information *at all times*". (Sealing Mot. at 2 (emphasis added).) But none of the allegations include specific terms of subscription agreements that would reveal any proprietary information, including any pricing information. CureIS's CEO similarly asserted that the customer identities were "CureIS's highly confidential information" and that "[p]ublic disclosure of this information could significantly harm CureIS competitively and violate its contractual obligations to its customers", despite the fact that customer identities had previously been disclosed by CureIS on its own website and social media. (Sawotin Decl. ¶¶ 3-4.)

      The next day, before Epic's counsel had appeared in this case and on the same day that CureIS filed a corrected version of its redacted Complaint (Dkt. No. 4), Magistrate Judge Kim granted CureIS's Sealing Motion. (*See* Dkt. No. 5 ("Sealing Order").) Judge Kim concluded that "[p]rotecting confidentiality interests and safeguarding against competitive harm constitute compelling reasons that justify sealing". (*Id.* at 1.)

      On June 17, 2025, Epic filed its Notice of Motion and Motion to Transfer Venue to the Western District of Wisconsin Pursuant to 28 U.S.C. § 1404(a) (Dkt. No. 22 ("Motion to Transfer")), as well as an Administrative Motion to Consider Whether Another Party's Material Should Be Sealed (Dkt. No. 23 ("Epic's Administrative Motion")), which was required given the

---

[3] Epic does not contest sealing of the names and email addresses of non-party employees identified in the Complaint. For avoidance of doubt, when Epic refers to customer identifying information that should be unsealed, it does not include names and email addresses of non-party employees.

[4] In the sealed version of the Complaint, CureIS indicates through highlighting that certain quotes from customers in paragraph 64 have been sealed, but the public version of the Complaint filed on the docket does not redact these statements. Accordingly, Epic does not consider these statements to be a part of CureIS's redactions at issue in this motion.

prior Sealing Order. In Epic's Administrative Motion, Epic emphasized its view that the customer names and identifying information in CureIS's Complaint or Epic's Motion to Transfer should be unsealed. In response to Epic's Administrative Motion, CureIS filed its Sealing Statement Regarding Documents Submitted with Defendant's Motion to Transfer Venue Filed Pursuant to Local Rules 70-(5)(f)(3) and 79(c)(1) (Dkt. No. 24 ("Sealing Statement")), which largely repeated the same arguments set forth in CureIS's Sealing Motion, yet sought to seal even more material than previously provided for in the Sealing Order. In tandem with this motion, Epic is filing a response to CureIS's Sealing Statement, which incorporates by reference the arguments set forth herein.

## LEGAL STANDARD

"Parties or non-parties may, at any time, file a motion requesting that the Court unseal a document." Civil L.R. 79-5(g)(3). There is a "strong presumption in favor of access [a]s the starting point." *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1161 (N.D. Cal. 2021); *see also* Civil L.R. 79-5(a) ("The public has a right of access to the Court's files."). As the Supreme Court has recognized, "courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). Such access "bolsters understanding of the judicial process and confidence in the administration of justice", as well as "provides a measure of accountability for courts". *Realtek Semiconductor Corp. v. MediaTek, Inc.*, 769 F. Supp. 3d 1067, 1101-02 (N.D. Cal. 2025) (quotation omitted). In recognition of this strong presumption of access, a party seeking to seal documents or information that are "more than tangentially related to the underlying cause of action"—including in particular a complaint, which "forms the foundation of the lawsuit"—bears the burden of overcoming the presumption with "compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure". *In re Google Location Hist. Litig.*, 514 F. Supp. 3d at 1161; *see also Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (recognizing heightened compelling reasons standard was adopted because "resolution of a

1  dispute on the merits . . . is at the heart of the interest in ensuring the public's understanding of
2  the judicial process and of significant public events" (quotation omitted)).
3  "The 'compelling reasons' standard is a strict one, and requires that the party seeking to
4  seal material show specific, individualized reasons for sealing the material"; "[s]imply
5  mentioning a general category of privilege, without any further elaboration or any specific
6  linkage with [the materials at issue], does not satisfy th[is] burden." *Open Text S.A. v. Box, Inc.*,
7  No. 13-cv-04910-JD, 2014 WL 7368594, at *2 (N.D. Cal. Dec. 26, 2014) (quotation omitted).
8  "[S]upporting declarations may not rely on vague boilerplate language or nebulous assertions of
9  potential harm but must explain with particularity why any document or portion thereof remains
10 sealable under the applicable legal standard." *Stemmelin v. Matterport, Inc.*, No. C 20-04168
11 WHA, 2022 WL 1422567, at *1 (N.D. Cal. May 5, 2022). "Under this stringent standard, the
12 Court must conscientiously balance the competing interests of the public and the party who seeks
13 to keep certain judicial records secret". *Realtek Semiconductor Corp.*, 769 F. Supp. 3d at 1101-
14 02 (quotation omitted).

## ARGUMENT

CureIS has not established that the customer names and identifying information redacted in its Complaint should be sealed. *First*, CureIS fails to establish compelling reasons to redact the specific customer names that are at the heart of the Complaint because (i) CureIS itself affirmatively publicly disclosed customer names for many years on its own website and elsewhere to market its products, and (ii) CureIS has not advanced particularized reasons supported by facts sufficient to meet its burden to justify sealing. *Second*, there is a strong public interest in this matter and CureIS should not be able to engage in an attempted smear campaign while at the same time withholding critical information from the public regarding its core allegations so that the public can assess the veracity of CureIS's claims.

**I.    CureIS Fails to Show Compelling Reasons to Seal Customer Information.**

CureIS has failed to demonstrate compelling reasons to redact customer identifying information in the Complaint. *First*, the customer identifying information that CureIS has redacted in the Complaint is the same type of information that CureIS itself publicly disclosed

for years that CureIS has no basis to seal now.  *Second*, CureIS's generic assertions that the redactions in the Complaint are necessary to protect confidentiality interests and safeguard against competitive harm do not satisfy its burden of proof.

### A.     CureIS Publicly Disclosed Customer Names It Now Seeks to Seal.

As set forth above, CureIS's representation that it "goes to great lengths to keep the identities of its customers confidential" (Sealing Mot. at 1) is false.  As demonstrated above, CureIS's public disclosures over the course of many years disclosed not only the names of CureIS's customers but also information about the work CureIS undertook for those customers, which is the same type of information CureIS now claims would cause harm if publicly disclosed.  (*See id.* at 2 (asserting that disclosure of "[c]ustomer identities and the existence and terms of confidential contracts" would "risk significant competitive harm").)  For example, CureIS's public disclosure of ▮▮▮ as a customer and the fact that ▮▮▮ implemented CureIS's EnrollmentCURE product directly contradicts CureIS's representation in its Sealing Motion that "CureIS maintains the confidentiality of such information at all times" and would be harmed if this information were published (*id.*) and CureIS's CEO's sworn statement that "the complaint contains CureIS's highly confidential information, *including confidential customer identities*" and that "[p]ublic disclosure of this information could significantly harm CureIS competitively and violate its contractual obligations to its customers".  (Sawotin Decl. ¶ 4 (emphasis added).)

Given that CureIS has openly and publicly disclosed information front and center on its own website, that now public information is not appropriately sealed.  *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2014 WL 10537440, at *5 (N.D. Cal. Aug. 6, 2014) (explaining that "[b]oth the Ninth Circuit and this Court have held that material that has been publicly disclosed cannot be protected" because "[t]here is an inherent logical dilemma underlying the parties' requests [to seal] because information that has already entered the public domain cannot in any meaningful way be later removed from the public domain." (quotation omitted)); *see also*, *e.g.*, *Simpson Strong-Tie Co. Inc. v. MiTek Inc.*, No. 20-cv-06957-VKD, 2023 WL 9187547, at *2 (N.D. Cal. Dec. 15, 2023) ("Information that is 'either already publicly available or available in other documents' should not be sealed."); *In re Twitter Inc. Sec. Litig.*, No. 16-cv-05314-JST,

2020 WL 2519888, at *2 (N.D. Cal. May 18, 2020) (denying motion to seal information that was "already in the public domain" and collecting cases for that same proposition).

CureIS apparently had no issue with disclosing information about its customers when it saw fit to advertise its own products and services. But now it seeks to shield that same information when using those customers to form the basis of claims against Epic. CureIS cannot have it both ways. CureIS has not established "compelling reasons" to seal any customer identifying information listed in the Complaint.

B.     CureIS's Generalized Assertions Supporting Sealing Are Inadequate.

Even if CureIS had not previously publicly disclosed many of its customers' names, CureIS still does not establish compelling reasons to seal generalized information about the names of actual or prospective customers. To establish compelling reasons justifying sealing, CureIS has the burden to "show specific, individualized reasons for sealing the material" at issue. *Open Text S.A.*, 2014 WL 7368594, at *2. CureIS cannot rely on a declaration with only "vague boilerplate language or nebulous assertions of potential harm", and instead "must explain with particularity why any document or portion thereof remains sealable under the applicable legal standard". *Stemmelin*, 2022 WL 1422567, at *1. Here, CureIS has not met this standard.

CureIS's Sealing Motion and the accompanying Sawotin Declaration reflect only generalized and unsupported assertions that fail to meet this strict requirement. Specifically, CureIS asserts that "portions of the Complaint that reveal the identities of its customers, the existence of confidential contractual relationships, non-public negotiations, and references to the terms of its subscription license agreements" should be sealed because "disclosure would risk significant competitive harm by enabling competitors to solicit CureIS's customers, disrupt business relationships, and gain access to commercially sensitive, non-public information". (Sealing Mot. at 1-2; *see also* Sawotin Decl. ¶ 3 (asserting that public disclosure of "CureIS's and CureIS's customers' confidential information . . . would likely harm CureIS's competitive standing if publicly disclosed").) Courts repeatedly have found similar generalized allegations insufficient to warrant sealing. *See, e.g.*, *Fairbairn v. Fidelity Invs. Charitable Gift Fund*, No. 18-cv-04881-JSC, 2020 WL 6788864, at *1 (N.D. Cal. Mar. 2, 2020) (collecting cases for

-8-

the proposition that "conclusory statements that the materials discussed [] are confidential and nonpublic, does not demonstrate that they are properly sealable."); *In re Twitter Inc. Sec. Litig.*, 2020 WL 2519888, at *2 (denying sealing request that was based on generic assertion that "public disclosure . . . would place Twitter at a competitive disadvantage" without providing "any explanation as to 'how a competitor would use the information to obtain an unfair advantage'"); *Yates v. Cheeseburger Rests., Inc.*, No. 2:22-cv-01081-DAD-DB, 2023 WL 4747431, at *2 (E.D. Cal. July 25, 2023) (holding that "conclusory assertions that the [materials sought to be sealed] consist of 'confidential agreements' . . . are insufficient to satisfy [a party's] burden to articulate compelling reasons that justify sealing"). CureIS has not identified any way in which a competitor could use the information to obtain an unfair advantage.

Moreover, CureIS's conclusory assertion of competitive harm that would result if customer identifying information in the Complaint were revealed—namely, that such disclosure would allow competitors to "target [CureIS's] customers directly, thereby harming CureIS's competitive standing and jeopardizing its customer relationships" (Sealing Mot. at 1)—is also insufficient to satisfy the compelling reasons standard. *See*, *e.g.*, *Open Text S.A.*, 2014 WL 7368594, at *3 (explaining that the party seeking sealing had not shown compelling reasons to seal customer names where it made unsupported allegations of how a competitor would use the information to obtain an unfair advantage). Even assuming this were a legitimate concern (which CureIS has not established), CureIS itself already opened itself up to this possibility by publicly identifying numerous customers on its own website from at least 2014 to 2022. (*See supra* Section I(A).) And CureIS fails to allege that such prior disclosure caused it any competitive harm. *See Buhl v. Abbott Labs.*, No. 17-cv-04244-NC, 2019 WL 13248007, at *2 (N.D. Cal. Feb. 19, 2019) (denying request to seal as to information that was previously disclosed where plaintiff cited no competitive harm that it had experienced as a result of the prior public disclosure). Speculative claims of prospective harm from disclosure do not suffice. *See*, *e.g.*, *Simpson Strong-Tie Co. Inc.*, 2023 WL 9187547, at *2 ("Speculative or implausible claims of harm will not suffice.").

CureIS asserts that "[i]f publicly disclosed, the terms, pricing, and existence of CureIS's subscription license agreements could provide competitors with a significant advantage by revealing CureIS's confidential business strategies", which "would enable competitors to undercut CureIS's pricing" and "replicate its contractual terms". (Sealing Mot. at 1.) But the Complaint does not include specific terms of CureIS's subscription agreements that would reveal proprietary information anywhere in the Complaint—meaning public disclosure of the information redacted in the Complaint could not even theoretically harm CureIS in the way it has claimed. Indeed, not a single allegation in the Complaint details CureIS's actual or proposed pricing or any specific contract terms related to details of CureIS's product offerings and services. While the Complaint *references* the existence of a proposal—such as a May 2024 proposal CureIS allegedly sent to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮) (Compl. ¶¶ 87-88)—it does not attach the proposal itself or detail any of the specific terms of the proposal in the Complaint, meaning that even if the Complaint is unsealed such information would not be made public.[5] CureIS cannot justify sealing customer names based on arguments about the confidentiality of *other* types of information not at issue. *See*, *e.g.*, *Kamakana*, 447 F.3d at 1183-84 (recognizing that party fails to show compelling reasons when it does not connect privilege asserted to "specific linkage with the documents" at issue).

CureIS's assertion that it would suffer competitive harm is even more attenuated as to *prospective* customers named in the Complaint such as ▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮.

---

[5] The paragraph in the Complaint describing CureIS's proposal to ▮▮▮▮▮▮▮ and the purportedly proprietary and trade secret information it contains is not redacted as to the descriptions of the information contained in the proposal, but only as to the name of the prospective customer the proposal was shared with. (Compl. ¶ 88.) CureIS has not articulated any reason that disclosing ▮▮▮▮▮▮▮ name would subject CureIS to harm, especially because the description of the proposal in the Complaint does not include actual details of the design specifications, features, or pricing that were shared such that a prospective competitor could "undercut CureIS's pricing" or "replicate its contractual terms" to the specific customer at issue. (Sealing Mot. at 1.) Moreover, to the extent specific proposals or contractual negotiations described in the Complaint would allow competitors to replicate CureIS's contractual terms or otherwise harm CureIS, CureIS offers no justification for sealing customer names rather than the substance of the documents or discussions described in the Complaint that purportedly would expose CureIS to harm. (*See*, *e.g.*, Compl. ¶¶ 47-48, 68, 86-88 (sealing customer names but not description of documents or negotiations).)

Based on the allegations in the Complaint, CureIS never entered into a software subscription agreement with ▮▮▮▮▮ to provide products or services (Compl. ¶¶ 47-50), which means there are no finalized terms or pricing with ▮▮▮▮▮, nor is there the "existence of CureIS's subscription license agreement[]" with ▮▮▮▮▮ that "could provide competitors with a significant advantage by revealing CureIS's confidential business strategies and customer relationships." (Sealing Mot. at 1.)  By CureIS's own admission, such documents do not exist; this is yet another reason that CureIS has not demonstrated it would suffer competitive harm if the name of its prospective customer ▮▮▮▮▮ is revealed.[6]  This same argument also applies to ▮▮▮▮▮, as CureIS does not allege that it entered into a final agreement with ▮▮▮▮▮ in either 2023 or 2024.  (*See* Compl. ¶ 68 (explaining that in 2023, "contract discussions between CureIS and ▮▮▮▮▮ stalled out" and "▮▮▮▮▮ communicated to CureIS that the LettersCURE functionality would be handled 'internally'"); *id.* ¶¶ 71-72 (describing proposed solution CureIS offered to Epic in 2024 and asserting that ▮▮▮▮▮ IT department "shut[] down the project".)  Moreover, CureIS does not detail in the Complaint any specific terms in the proposals it offered to ▮▮▮▮▮ or ▮▮▮▮▮ that would reveal proprietary information if disclosed.

   These customer names are not just tangentially related to this case; they are at the center of it.  The absence of compelling reasons to keep them under seal is thus particularly acute.  *See, e.g., Smith v. Diaz*, No. 20-cv-04335-HSG, 2025 WL 948117, at *2 (N.D. Cal. Mar. 28, 2025) (finding party failed to show compelling reasons to seal the report that formed basis for defendant's summary judgment motion because the report was "at the heart of this case"); *see also Dangaard v. Instagram*, No. C 22-01101 WHA, 2023 WL 4869234, at *5 (N.D. Cal.

---

[6] CureIS also redacted a one-sentence excerpt from its proposal to ▮▮▮▮▮ that it describes in the Complaint as a "confidentiality notice[]". (Compl. ¶ 89.)  But the actual language of the excerpt reveals that the redacted language is merely a generic statement of confidentiality, which is not properly sealable.  *See Tesla, Inc. v. McKechnie Vehicle Components USA, Inc.*, No. 21-cv-01962-BLF, 2021 WL 6332531, at *2 (N.D. Cal. Apr. 1, 2021) (denying motion to seal portions of contract where contract terms at issue were "relatively generic").

July 31, 2023) (denying request to seal identifying information related to the location of defendant's consultants where such information was relevant to plaintiffs' merits argument).

CureIS's failure to specify any particularized harm that it would face if the identity of the customers at the heart of this dispute were made public is fatal to its sealing request. *See*, *e.g.*, *U.S. Ethernet Innovations, LLC v. Acer*, No. C 10-3724 CW, 2013 WL 4426507, at *2 (N.D. Cal. Aug. 14, 2013) (finding that sealing of customer name was unwarranted where party seeking sealing "has not provided any compelling reason to keep this customer's identity under seal"); *Digital Reg of Texas, LLC v. Adobe Sys. Inc.*, No. C 12-1971 CW, 2013 WL 4049686, at *2 (N.D. Cal. Aug. 8, 2013) (denying motion to seal where plaintiff failed to "provide any specific reasons, supported by facts, that could outweigh the public policy favoring public access to court filings").[7]

## II.   The Public Interest Supports Unsealing CureIS's Complaint.

When assessing whether to seal information, courts "must conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret." *Realtek Semiconductor Corp.*, 769 F. Supp. 3d at 1101-02 (quotation omitted). Critically, public interest in this case has been driven in part by CureIS itself, which has taken to litigating this case in the media and using inflammatory language to garner public attention. (Moskowitz Decl. Ex. K (describing CureIS's lawsuit as one purportedly "alleging monopolistic conduct" against "healthcare IT behemoth, Epic" and linking to "media highlights" regarding the litigation).) CureIS should not be able to engage in an attempted public smear campaign while at the same

---

[7] CureIS cites two cases in its Sealing Motion to support sealing customer identifying information, but both are distinguishable. (*See* Sealing Mot. at 3 (citing *Flextronics Int'l USA, Inc. v. Murata Mfg. Co.*, No. 5:19-cv-00078-EJD, 2019 WL 13554029 (N.D. Cal. Dec. 16, 2019) and *Mezzadri v. Med. Depot, Inc.*, No. 14-CV-2330-AJB-DHB, 2015 WL 12564223 (S.D. Cal. Dec. 18, 2015)).) In *Flextronics*, there was no objection to the sealing request, whereas CureIS's motion here is opposed by Epic. 2019 WL 13554029, at *2. In *Mezzadri*, the information at issue was a comprehensive customer list that the court deemed a trade secret, whereas here the issue is identifying information of a handful of specific customers who are central to the allegations in the Complaint—several of which already were disclosed publicly by CureIS. 2015 WL 12564223, at *2. While sensitive and detailed information of the nature described in *Mezzadri* might potentially be sealable, the generalized customer information in CureIS's Complaint is not.

time withholding critical information from the public regarding its core allegations—namely, the identity of the customers central to each of CureIS's claims—that would allow Epic customers and the public at large to assess and evaluate the veracity of CureIS's claims. *See CreAgri, Inc. v. Pinnaclife Inc.*, No. 5:11-CV-06635-LHK, 2014 WL 27028, at *2 (N.D. Cal. Jan. 2, 2014) (denying request to redact information that "is critical to understanding" pending motion because the "public interest is high" in such situations); *Weiss v. Sovereign Nation of Afghanistan*, No. 23-cv-02827-HSG, 2023 WL 8530506, at *2 (N.D. Cal. Nov. 21, 2023) (denying motion to file exhibit to complaint under seal where "the interest in ensuring the public's understanding of the judicial process . . . would be impaired if the fundamental basis for Plaintiffs' claims is redacted from the complaint"). Consequently, the public interest strongly supports disclosure of the critical facts underlying CureIS's Complaint, which weighs in favor of unsealing the customer names and identifying information in CureIS's Complaint.

## CONCLUSION

For the foregoing reasons, Epic respectfully requests that the Court unseal the redacted portions of CureIS's Complaint containing customer names and identifying information.

| | |
|---|---|
| Dated: June 30, 2025 | Respectfully submitted, |
| | By:   */s/ Lauren A. Moskowitz* |

**CRAVATH, SWAINE & MOORE LLP**

Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Lauren M. Rosenberg (*pro hac vice*)
lrosenberg@cravath.com
375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

**AKIN GUMP STRAUSS HAUER & FELD LLP**

Robert Salcido (SBN 139138)
rsalcido@akingump.com
4 Park Plaza, Suite 1900
Irvine, California 92614
Telephone: (949) 885-4100
Facsimile: (949) 885-4101

*Attorneys for Defendant Epic Systems Corporation*