Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Lauren M. Rosenberg (*pro hac vice*)
lrosenberg@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
375 Ninth Avenue
New York, New York 10001
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

Robert Salcido (SBN 139138)
rsalcido@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
4 Park Plaza, Suite 1900
Irvine, CA 92614
Telephone:  (949) 885-4100
Facsimile:  (949) 885-4101

*Attorneys for Defendant Epic Systems Corporation*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CureIS Healthcare, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Epic Systems Corporation,<br><br>Defendant. | Case No.: 3:25-cv-04108-MMC<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE TO THE WESTERN DISTRICT OF WISCONSIN PURSUANT TO 28 U.S.C. § 1404(a)**<br><br>Hearing Date:  August 8, 2025<br><br>Time:  9:00 a.m.<br><br>Judge:  Hon. Maxine M. Chesney |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................1

ARGUMENT ..................................................................................................1

I.    Venue Is Proper in the Western District of Wisconsin. ....................................1

II.   The Section 1404(a) Factors Weigh Strongly in Favor of Transferring Venue. ................2

    A.    CureIS's Choice of Forum Should Be Afforded Little to No Deference. ...............2

    B.    The Western District of Wisconsin Is a More Convenient Forum for the Parties. ......................................................................................5

    C.    The Western District of Wisconsin Is a More Convenient Forum for Witnesses. ...................................................................................8

    D.    The Ease of Access to Evidence Weighs in Favor of Transfer. ..........................12

    E.    The Districts Are Equally Capable of Applying Applicable Law. .......................13

    F.    The Western District of Wisconsin Has a Strong Interest in the Controversy. ......13

    G.    Relative Court Congestion Weighs in Favor of Transfer. ...............................15

CONCLUSION ...............................................................................................15

Defendant's Reply in Support of Motion to Transfer Venue        Case No. 3:25-cv-04108-MMC

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Trading Int'l, Inc. v. MCF Operating, LLC*,
    No. CV 19-5851-JFW(PLAx), 2019 WL 6139113 (C.D. Cal. Sept. 24, 2019) ...................12

*Baird v. OsteoStrong Franchising, LLC*,
    No. 2:20-cv-02010-TLN-DMC, 2022 WL 705883 (E.D. Cal. Mar. 9, 2022) .......................14

*Barnstormers, Inc. v. Wing Walkers, LLC*,
    No. 09-cv-2367 BEN (RBB), 2010 WL 2754249 (S.D. Cal. July 9, 2010) .........................13

*Bhatia v. Silvergate Bank*,
    No. 23-cv-00667-JSC, 2023 WL 4937325 (N.D. Cal. Aug. 1, 2023)...............................3, 11

*Bloom v. Express Servs. Inc.*,
    No. C 11-00009 CRB, 2011 WL 1481402 (N.D. Cal. Apr. 19, 2011)....................................4

*Bridgeport Enters., Inc. v. ValCom, Inc.*,
    No. CV 12-7159-GHK (FMOx), 2013 WL 12129388 (C.D. Cal. Mar. 29,
    2013)...............................................................................................................................7, 8

*Bridges v. Dealers' Choice Truckaway Sys., Inc.*,
    No. 2:20-cv-01620-ODW, (SKx) 2020 WL 4937505 (C.D. Cal. Aug. 24,
    2020).........................................................................................................................6, 7, 11

*Chesapeake Climate Action Network v. Exp.-Imp. Bank of the U.S.*,
    No. C 13-03532 WHA, 2013 WL 6057824 (N.D. Cal. Nov. 15, 2013) ...............................5

*Civello v. Equinix, Inc.*,
    No. 24-cv-08803-JSW, 2025 WL 660247 (N.D. Cal. Feb. 28, 2025) .................................15

*Clark v. VIP Petcare, LLC*,
    No. 22-cv-08935-AMO, 2023 WL 8459928 (N.D. Cal. Dec. 6, 2023) ...............................13

*Crittendon v. Muldrow*,
    No. 22-cv-09153-RS, 2025 WL 35046 (N.D. Cal. Jan. 6, 2025)...........................................2

*Ctr. For Med. Progress v. Becerra*,
    No. 8:20-cv-00891-JLS-DFM, 2020 WL 7786536 (C.D. Cal. Nov. 12, 2020)......................9

*Flotsam of California, Inc. v. Huntington Beach Conf. & Visitors Bureau*,
    No. C 06-7028 MMC, 2007 WL 1152682 (N.D. Cal. Apr. 18, 2007)....................................2

*GLT Technovations, LLC v. Fownes Bros. & Co.*,
    No. 12-CV-00466 RMW, 2012 WL 1380338 (N.D. Cal. Apr. 20, 2012)...............................4

*Hawkins v. Gerber Prods. Co.*,
    924 F. Supp. 2d 1208 (S.D. Cal. 2013) ...............................................................................4

*Hinze v. Tesla, Inc.*,
    No. 22-cv-02944-AMO, 2024 WL 4607696 (N.D. Cal. Oct. 28, 2024) ...............................15

*Hunt v. Ameritas Life Ins. Co.*,
  No. 19-CV-01657-JSW, 2019 WL 7666755 (N.D. Cal. Sept. 25, 2019) ............................... 15

*Hyundai Motor Co. v. Hyundai Tech. Grp., Inc.*,
  No. 23-cv-01410-JST, 2023 WL 11950485 (N.D. Cal. Sept. 10, 2023) ........................ 12, 13

*Lightspeed Aviation, Inc. v. Bose Corp.*,
  No. 10-CV-239-BR, 2010 WL 3928624 (D. Or. Oct. 1, 2010) ............................................ 14

*Linear Tech. Corp. v. Analog Devices, Inc.*,
  No. C-94-3988-THE (WDB), 1995 WL 225672 (N.D. Cal. Mar. 10, 1995) ........................ 15

*Lou v. Belzberg*,
  834 F.2d 730 (9th Cir. 1987) ............................................................................................ 5

*McClure v. Panzura, LLC*,
  No. 24-cv-02966-EKL, 2025 WL 901945 (N.D. Cal. Mar. 25, 2025) ............................... 7, 8

*McGucken v. Lonely Planet Glob., Inc.*,
  No. CV 22-5476-DMG (SKx), 2023 WL 4206107 (C.D. Cal. May 11, 2023) ............ 8, 11, 12

*Nortek Prods. (Taichang) Ltd. v. FAIP North Am., Inc.*,
  No. C-10-0810 MMC, 2010 WL 1838934 (N.D. Cal. May 4, 2010) ................................... 10

*Park v. Dole Fresh Vegetables, Inc.*,
  964 F. Supp. 2d 1088 (N.D. Cal. 2013) ............................................................................ 12

*Rabinowitz v. Samsung Elecs. Am., Inc.*,
  No. 14-cv-00801-JCS, 2014 WL 5422576 (N.D. Cal. Oct. 10, 2014) .......................... 3, 5, 14

*Romoff v. Johnson & Johnson Consumer Inc.*,
  No. 22-cv-75-LL-WVG, 2022 WL 3905301 (S.D. Cal. Aug. 26, 2022) .............................. 14

*Rubio v. Monsanto Co.*,
  181 F. Supp. 3d 746 (C.D. Cal. 2016) ................................................................................ 4

*Saleh v. Titan Corp.*,
  361 F. Supp. 2d 1152 (S.D. Cal. 2005) ............................................................................. 9

*Skyriver Tech. Sols., LLC v. OCLC Online Comput. Libr. Ctr., Inc.*,
  No. C 10-03305 JSW, 2010 WL 4366127 (N.D. Cal. Oct. 28, 2010) ................................. 13

*Sorensen v. Daimler Chrysler AG*,
  No. C 02-4752 MMC (EDL), 2003 WL 1888866 (N.D. Cal. Apr. 11, 2003) ................... 7, 10

*Stanbury Elec. Engin., LLC v. Energy Prods., Inc.*,
  No. C16-0362JLR, 2016 WL 3255003 (W.D. Wash. June 13, 2016) ................................. 10

*Stoll v. Rimini Street, Inc.*,
  No. 21-cv-01930-JST, 2021 WL 6618642 (N.D. Cal. Sept. 14, 2021) ............................... 11

*STX, Inc. v. Trik Stik, Inc.*,
  708 F. Supp. 1551 (N.D. Cal. 1988) ................................................................................... 3

*Trueforce Glob. Servs., Inc. v. TruEffect, Inc.*,
    No. C 20-0080 SBA, 2020 WL 11231812 (N.D. Cal. June 1, 2020)....................................14

*Vicious Brands, Inc. v. Face Co., LLC*,
    No. 24-cv-04996-LJC, 2024 WL 4753287 (N.D. Cal. Nov. 12, 2024)...................................3

*Vu v. Ortho-McNeil Pharm., Inc.*,
    602 F. Supp. 2d 1151 (N.D. Cal. 2009).................................................................................2

**Statutes & Rules**

28 U.S.C. § 1404(a) ...................................................................................................................2, 15

Fed. R. Civ. P. 45(c)(1)(A)-(B) ....................................................................................................10

1

## INTRODUCTION

2      Stretching to oppose transfer, CureIS[1] incredibly asserts that it "has always been a

3  California-focused organization". (Dkt. No. 30 ("Opp." or "Opposition") 1.)  Yet CureIS has

4  never been organized under California law, has never been headquartered in California, and has

5  never even had a physical office in California.  Nor does CureIS allege in its Complaint that its

6  business is California-focused.  To the contrary, CureIS describes itself as a Minnesota

7  corporation that "helped improve healthcare . . . throughout the country". (Compl. ¶¶ 4, 9.)

8      CureIS also remarkably argues that the "cast of this particular tale" has "far more contact

9  with California than Wisconsin, *if they have any contact with Wisconsin at all*" (Opp. 2

10  (emphasis added)), while simultaneously submitting a declaration from CureIS's own CEO and

11  co-founder, Christopher Sawotin, "executed in Grantsburg, Wisconsin". (Dkt. No. 28-1

12  ("Sawotin Decl.") at 5.)  Not only is *Epic* headquartered and located in Wisconsin along with its

13  thousands of employees, but CureIS's CEO and COO are located in Wisconsin—a fact CureIS

14  attempts to minimize by asserting that they "work remotely". (Opp. 6.)

15      CureIS cannot manufacture ties to this district by focusing on the residence of certain of

16  its customers, particularly given its own allegations that its customers are located "throughout the

17  country" and the reality that only one of the prospective or actual customers CureIS named in the

18  Complaint is located in the Northern District of California.  The facts of this litigation are clear:

19  A Minnesota company and its Wisconsin CEO are trying to avoid litigating this case in a

20  Wisconsin district court after suing a Wisconsin corporation for actions that purportedly

21  emanated from employees in Wisconsin.  This Court should exercise its broad discretion to

22  transfer this case to the Western District of Wisconsin.

23

## ARGUMENT

24  **I.    Venue Is Proper in the Western District of Wisconsin.**

25      CureIS does not contest that venue is proper in the Western District of Wisconsin.  That

26  is all that is required to satisfy the threshold showing required for this Motion.  CureIS

27

28      [1] Terms used but not defined herein shall have the meaning ascribed to them in Epic's
Motion to Transfer Venue. (Dkt. No. 22 ("Motion" or "Mot.").)

misunderstands the standard by arguing incorrectly that Epic has conceded that venue is proper in *this Court*.  (Opp. 7.)  Epic has made no such concession, and whether venue is proper in this district (the transferor forum) is irrelevant to the transfer analysis, which looks solely to whether this action could have been brought in the transferee forum.  (Mot. 8 (citing *Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ. v. Varian Med. Sys., Inc.*, No. C-08-2973 MMC, 2008 WL 4279704, at *1 (N.D. Cal. Sept. 16, 2008) (Chesney, J.)).)

## II.    The Section 1404(a) Factors Weigh Strongly in Favor of Transferring Venue.

Given that it is undisputed that this action could have been brought in the Western District of Wisconsin, the Court must determine whether transfer to that court is warranted "[f]or the convenience of parties and witnesses" and "in the interest of justice".  *See* 28 U.S.C. § 1404(a).  All of the factors courts consider in deciding how to exercise its "broad discretion", *see Crittendon v. Muldrow*, No. 22-cv-09153-RS, 2025 WL 35046, at *2 (N.D. Cal. Jan. 6, 2025), weigh decidedly in favor of transfer of this case to the Western District of Wisconsin.

### A.    CureIS's Choice of Forum Should Be Afforded Little to No Deference.

Although the first factor generally gives deference to "plaintiff's choice of forum", that deference is "greatly reduced" where, as here, the plaintiff chooses to litigate away from its home forum.  (Mot. 8 (quoting *Univ. of Pittsburgh*, 2008 WL 4279704, at *2).)  CureIS chose to bring this suit hundreds of miles from its home forum.  There is no dispute that CureIS does not reside in the Northern District of California.  (Compl. ¶ 9 (CureIS is "a privately held corporation organized and existing under the laws of Minnesota").)  As such, CureIS's choice of forum does not meaningfully weigh against transfer.  *See Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009) ("Where a plaintiff does not reside in the forum, the Court may afford plaintiff's choice considerably less weight.").

Instead of acknowledging Epic's directly on point caselaw showing the reduced deference to CureIS's selected forum because it does not reside here, CureIS cites a number of inapposite cases that simply recite the general proposition that deference to a plaintiff's choice of forum is appropriate when it is their home forum.  (Opp. 7 (citing *Flotsam of California, Inc. v. Huntington Beach Conf. & Visitors Bureau*, No. C 06-7028 MMC, 2007 WL 1152682, at *1

(N.D. Cal. Apr. 18, 2007) (Chesney, J.) (giving plaintiff's choice of forum deference where that forum was "the plaintiff's domicile"); *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1553, 1556 (N.D. Cal. 1988) (applying principle that a plaintiff's home forum is generally entitled to deference).) CureIS nowhere addresses the cases Epic cites that specifically address the situation where, as here, a non-resident is haled to a court thousands of miles from its home by a plaintiff who is also a non-resident of that forum.

Perhaps in tacit recognition of the caselaw CureIS cannot answer, CureIS asserts that its choice of forum should be entitled to deference because CureIS "conducts a significant portion of [its] business in California". (Opp. 8 (citing *Vicious Brands, Inc. v. Face Co., LLC*, No. 24-cv-04996-LJC, 2024 WL 4753287, at *12 (N.D. Cal. Nov. 12, 2024)).) But CureIS ignores that, even the court in *Vicious Brands* recognized that "plaintiff's choice of forum is entitled to less deference . . . when the plaintiff elects to pursue a case outside its home forum." *Vicious Brands, Inc.*, 2024 WL 4753287 at *12. And unlike in *Vicious Brands*, the other Section 1404(a) factors favor transfer in this case. *Id.* at *13.

Moreover, courts reduce the deference even further where the conduct giving rise to the claims occurred in a different forum. (Mot. 9 (citing *Rabinowitz v. Samsung Elecs. Am., Inc.*, No. 14-cv-00801-JCS, 2014 WL 5422576, at *4 (N.D. Cal. Oct. 10, 2014)).) CureIS attempts to distinguish the cases Epic cited by wrongly asserting that Epic "directed its tortious conduct at California healthcare organizations, causing concentrated harm to CureIS in this district." (Opp. 8.) But all of the alleged conduct occurred, if at all, by Epic employees working in Epic's headquarters in Verona, Wisconsin. *Rabinowitz*, 2014 WL 5422576, at *4 (recognizing that when assessing deference to a plaintiff's forum, the analysis is focused on where the challenged conduct "emanated from").[2] Where, as here, the crux of the case is in the transferee forum,

---

[2] CureIS argues that *Rabinowitz* is distinct because no "relevant acts occurred in [the chosen forum]". (Opp. 8.) But the same is true here, so *Rabinowitz* is precisely on point. CureIS's attempt to distinguish *Bhatia v. Silvergate Bank*, No. 23-cv-00667-JSC, 2023 WL 4937325 (N.D. Cal. Aug. 1, 2023) (Opp. 8 n.4) fails for the same reason—Epic lacks meaningful connections to California that relate to this litigation. 2023 WL 4937325, at *8. But even if the Northern District of California had some tie to the controversy, a plaintiff's choice of forum receives even

deference to the plaintiff's choice of forum is further reduced. *See, e.g.*, *Bloom v. Express Servs. Inc.*, No. C 11-00009 CRB, 2011 WL 1481402, at *2 (N.D. Cal. Apr. 19, 2011) (plaintiff's choice of forum is "given little deference" where the "relevant disputed acts supporting Plaintiff's [theory of relief] occurred in [the transferee forum]"); *GLT Technovations, LLC v. Fownes Bros. & Co.*, No. 12-CV-00466 RMW, 2012 WL 1380338, at *4 (N.D. Cal. Apr. 20, 2012) (giving only "slight deference" to plaintiff's choice of forum where the "center of gravity" of case was not in California).[3]

    Even if the Court were to consider where the conduct supposedly was "directed", CureIS's argument still fails. The portions of the Complaint that CureIS cites demonstrate that Epic's alleged conduct is not especially directed towards the Northern District of California. (Opp. 8 (citing Compl. ¶¶ 11, 14, 40-46, 53-56, 66-77).) For example, paragraphs 41-46 of the Complaint describe Epic's conduct related to ███████, a company based in ██████ (*see* Dkt. No. 22-1 ("Peterson Decl.") ¶ 15). Likewise, CureIS supports its assertion that Epic "caus[ed] concentrated harm to CureIS in this district" with cites to the Complaint alleging conduct related to █████, ███████████, ████████, and ████████, each of which is located outside the Northern District of California. (Opp. 8 (citing Compl. ¶¶ 11, 14, 40, 53-56, 66-77).) CureIS's position that Epic specifically directed its conduct towards this district is a tactical about-face from the Complaint that Epic's conduct was directed at its customers "throughout the country", including California, ███████, and Washington. (Compl. ¶ 4; *see generally id.* ¶¶ 102-132.) Indeed, only one prospective CureIS customer named in the Complaint—████████████—is even based in

less deference where, as here, "the great majority of the operative facts" occurred in the proposed transferee forum. *Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 762 (C.D. Cal. 2016).

[3] CureIS incorrectly asserts that these cases "demonstrate a fundamental misunderstanding of where the wrongful conduct occurred". (Opp. 9 n.5.) For example, CureIS argues that this action is focused on where purported trade secrets were extracted from, but identifies no precedent supporting this argument. And indeed, *GLT Technovations* concluded that the case's "center of gravity" was where the defendant purportedly *used* the allegedly proprietary information. 2012 WL 1380338, at *4. Similarly, *Hawkins v. Gerber Prods. Co.*, recognizes that in assessing false advertising claims like those alleged here, "the heart of the matter lies where" the defendant's purportedly unlawful decisions were made, which is "*typically at Defendant's headquarters*". 924 F. Supp. 2d 1208, 1215 (S.D. Cal. 2013) (emphasis added).

this district.  (Mot. 6 n.3.)  CureIS's reliance on California customers located hundreds of miles

from this district while simultaneously ignoring the non-California customers it identified in its

Complaint should be rejected.  *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("If the

operative facts have not occurred *within the forum* and the forum has no interest in the parties or

subject matter, [plaintiff's] choice is entitled to only minimal consideration." (emphasis added)).

CureIS's choice of forum should be entitled to little, if any, deference and, accordingly, Epic's

burden to transfer the case decreases.  *See Chesapeake Climate Action Network v. Exp.-Imp.*

*Bank of the U.S.*, No. C 13-03532 WHA, 2013 WL 6057824, at *2 (N.D. Cal. Nov. 15, 2013).

      B.    <u>The Western District of Wisconsin Is a More Convenient Forum for the Parties.</u>

      CureIS does not dispute the key facts demonstrating that the Western District of

Wisconsin is a more convenient forum for all parties.  Specifically:

    (i)     Epic is headquartered in Wisconsin (Compl. ¶ 10);

    (ii)    Epic employs more than 12,000 Wisconsin residents that work from Epic's

          campus in Verona, Wisconsin (Peterson Decl. ¶¶ 6-7);

    (iii)   Epic's corporate decision making, including decisions related to conduct alleged

          in this litigation, occurred in Wisconsin (*id.* ¶ 9);

    (iv)   CureIS is a Minnesota corporation (Compl. ¶ 9);

    (v)    CureIS's CEO and COO—the only two CureIS employees identified by name in

          the Complaint—are located in Wisconsin (Sawotin Decl. at 5; *id.* ¶ 9);

    (vi)   CureIS's other employees largely all work remotely and live "across the country"

          except for several employees who work at its Arizona office more than 800 miles

          away from this district (*id.* ¶ 4);

    (vii)  no party maintains a physical office or place of business in this district; and

    (viii)  CureIS will be litigating outside its home forum in either proposed district.

These are the key facts that courts regularly analyze when assessing the convenience of parties,

and weigh strongly in favor of transfer.  *See, e.g.*, *Rabinowitz*, 2014 WL 5422576, at *4.

      To sidestep these undisputed facts that are critical to the analysis, CureIS asserts that

transferring the case would shift the inconvenience from Epic to CureIS.  (Opp. 10.)  Courts have

-5-

1    rejected that argument where, like here, the plaintiff did not reside in the transferor forum.  *See*

2    *Bridges v. Dealers' Choice Truckaway Sys., Inc.*, No. 2:20-cv-01620-ODW (SKx), 2020 WL

3    4937505, at *7 (C.D. Cal. Aug. 24, 2020) (rejecting argument that transfer out of California

4    would shift burden to plaintiffs where "*no* [p]laintiffs reside in California").

5            Furthermore, CureIS's purported justification that transfer would force CureIS to "bear

6    significant costs litigating across multiple forums, including across California ***and*** in the Western

7    District of Wisconsin (among others)" (Opp. 10), conflates the parties' convenience with the

8    convenience of witnesses, which, as discussed below in Section II.C, also does not favor CureIS.

9    CureIS also fails to identify any concrete support for this supposed increased burden.  Instead,

10   CureIS merely asserts that there are non-party witnesses who reside in California that are beyond

11   the subpoena power of the Western District of Wisconsin, and that, as a result, "[l]itigating in

12   Wisconsin would require CureIS to initiate a substantial amount of ancillary proceedings in

13   California to obtain necessary discovery".  (*Id.*)  But CureIS does not explain what discovery it

14   anticipates needing from third parties, from which third parties it anticipates needing such

15   discovery, why it anticipates the need to initiate ancillary proceedings to obtain such discovery,

16   or why such proceedings would not also be required if this case were to remain in this district.  In

17   fact, five of the seven CureIS customers identified in the Complaint (including at least three in

18   California) are also hundreds of miles away from this district, so any purported need to initiate

19   ancillary proceedings if the case moves to for Wisconsin also exists if the case stays in this

20   district.  (*See infra* Section II.C.)

21           CureIS also has not established that it would be required to expend greater resources if

22   this case were transferred to the Western District of Wisconsin.  CureIS's generalized assertion

23   that it would be "less costly for CureIS to keep the case in this Court" is unsupported.  (Sawotin

24   Decl. ¶ 16.)  CureIS will need to travel to the Western District of Wisconsin to depose Epic's

25   witnesses regardless of which district this case is in; its CEO and COO are located in Wisconsin;

26   its other employees (who may or may not be relevant at all to this dispute) are located across the

27   country; and its only physical office location is more than 800 miles from the Northern District

28

Defendant's Reply in Support of Motion to Transfer Venue        Case No. 3:25-cv-04108-MMC

of California.[4]  (*See id.* at 5; *id.* ¶¶ 3-4, 8-9.)  Generalized statements expressing hypothetical concerns are insufficient to establish that litigating in the Western District of Wisconsin would be less convenient for CureIS.  *See Bridges*, 2020 WL 4937505, at *7 (rejecting "self-serving and speculative" declarations that transfer would increase costs and finding convenience of parties favored transfer).

CureIS's argument on party convenience again points to Epic's contacts with California generally.  But Epic has customers in every state, including many in Wisconsin, where it seeks to transfer this action.  (*See* Dkt. No. 28-2 ("Slagter Decl.") ¶ 4, Ex. 2); *see also Sorensen v. Daimler Chrysler AG*, No. C 02-4752 MMC (EDL), 2003 WL 1888866, at *4 (N.D. Cal. Apr. 11, 2003) (Chesney, J.) (finding that generalized contacts "are likely to exist in every district in the United States, including" the proposed transferee district).  Regardless, even CureIS's authorities recognize that where a party has "stronger contacts" in another district, that evidence "supports that litigating in [the transferor] [d]istrict may be less convenient" for that party.  (Opp. 10 (citing *McClure v. Panzura, LLC*, No. 24-cv-02966-EKL, 2025 WL 901945, at *7 (N.D. Cal. Mar. 25, 2025)).)  Here, Epic indisputably has stronger contacts in the Western District of Wisconsin than it does in the Northern District of California.

Because no party is a resident of this district, and Epic has demonstrated that litigating in the Western District of Wisconsin would be far more convenient, party convenience "strongly favors transfer".[5]  (Mot. 11 (quoting *Bridgeport Enters., Inc. v. ValCom, Inc.*, No. CV 12-7159-GHK (FMOx), 2013 WL 12129388, at *2-3 (C.D. Cal. Mar. 29, 2013)).)[6]

---

[4] The Sawotin Declaration asserts that CureIS no longer maintains a physical location in Minnesota despite CureIS identifying a principal place of business in Minnesota in its May 2025 Complaint.  (*Compare* Sawotin Decl. ¶ 3 *with* Compl. ¶ 9.)

[5] CureIS relies on an out of circuit case purportedly standing for the proposition that the plaintiff's choice of forum should prevail unless the balance of convenience of the parties is strongly in favor of transfer.  (Opp. 12 (citing *In re Xoft, Inc.*, 435 F. App'x 948, 949-50 (Fed. Cir. 2011)).)  That is not the standard in the Ninth Circuit, and CureIS does not argue otherwise. In any event, the balance clearly favors transfer.

[6] CureIS attempts to distinguish *Bridgeport* by arguing that it involved parties with no connections to the chosen forum.  (Opp. 12 n.6.)  But the party opposing transfer there argued

Defendant's Reply in Support of Motion to Transfer Venue          Case No. 3:25-cv-04108-MMC

C.     <u>The Western District of Wisconsin Is a More Convenient Forum for Witnesses.</u>

"In assessing whether the convenience of the witnesses favors transfer, the Court must consider both the location and number of witnesses each side has and the relative importance of those witnesses." *McGucken v. Lonely Planet Glob., Inc.*, No. CV 22-5476-DMG (SKx), 2023 WL 4206107, at *2 (C.D. Cal. May 11, 2023). Yet, CureIS focuses solely on the location of cherry-picked non-party witnesses and ignores the critical role of everyone else—both party and non-party witnesses outside this district. When analyzing the total number of *likely* witnesses and the relative importance of those witnesses, this factor too favors transfer.

<u>CureIS Ignores Non-Party Customer Witnesses Outside California, and Identifies Only a Few Non-Party Customer Witnesses in This District.</u> CureIS contends that "the vast majority of non-party witnesses with direct first-hand knowledge" of matters relevant to this action "live and work in California".[7] (Opp. 13.) As a threshold matter, CureIS's witness list is demonstrably unreliable because CureIS ignores non-party witnesses—including those identified by name in the Complaint—that are not located in California, and fails to provide sufficient detail for this Court to assess whether the California-based witnesses are important to the litigation and would offer non-cumulative testimony at trial. *See McClure*, 2025 WL 901945, at *6 (discounting list of non-party witnesses where party "ha[d] not shown that these witnesses are important to the litigation or that they would offer non-cumulative testimony"). In fact, CureIS entirely ignores the existence of ███████, one of CureIS's customers identified in the Complaint, *which is not located in California*. (Peterson Decl. ¶ 15.) Despite referencing ███████, "███████ Healthcare IT Director", in its Complaint no fewer than seven times—greater than the total number of references to California in the entirety of CureIS's Complaint—CureIS now

_____

that Bridgeport *did* have ties related to the forum. 2013 WL 12129388, at *2. The court expressly rejected those arguments because the identified connections were unrelated to the litigation. *Id.* The same is true here, as CureIS relies on the existence of Epic's customers in California that have nothing to do with its claims. (*See* Opp. 12 n.6.)

[7] Notably, of the fifteen non-party witnesses CureIS identified, only two are identified as being located within the Northern District of California. (Sawotin Decl. ¶¶ 12-13 (identifying ███████ in ███████, California and ███████ in ███████, California).)

1   altogether ignores ███████, presumably because she is based in ████. (*Compare* Sawotin

2   Decl. *with* Compl. ¶¶ 61-65, 119, 127.)  Similarly, CureIS ignores other ███████ employees

3   referenced in the Complaint, including ████████████████████████████████████████.

4   (Compl. ¶ 61.)  These non-party witnesses all work at the ██████-based ████████, which, as

5   CureIS does not dispute, is based much closer to the Western District of Wisconsin.[8]

6          Even for the non-party witnesses that CureIS does mention in its Opposition, its

7   descriptions are insufficient to establish that the witnesses are important and would offer non-

8   cumulative testimony.  Indeed, for almost all of the non-party witnesses CureIS identified,

9   CureIS conclusorily asserts that these individuals are "knowledgeable about Epic's interference

10  with" a customer's relationship with CureIS.  (Sawotin Decl. ¶¶ 11-14.)  Such bare allegations

11  are insufficient, as it is not clear that these individuals possess specific, non-duplicative

12  knowledge that will require their testimony at trial.[9]  *See Ctr. For Med. Progress v. Becerra*,

13  No. 8:20-cv-00891-JLS-DFM, 2020 WL 7786536, at *6 (C.D. Cal. Nov. 12, 2020) (discounting

14  descriptions of non-party witnesses based on often identical "bareboned" and "conclusory

15  statements about the proposed witnesses' anticipated testimony").

16         Furthermore, CureIS's unsupported assertion that transferring this case "would impede

17  CureIS's ability to secure critical testimony from non-party witnesses" because of Rule 45 does

18  not change the analysis here.  (Opp. 14.)  As an initial matter, two of the non-parties identified in

19  the Complaint—████████ and ████████—are headquartered in other states, and at least three

20  more—████████████, ████████, and ████████ (which are based in ████████████ and ████

21  ████, respectively)—are headquartered more than 100 miles from this district, which limits this

---

[8] Although CureIS's Complaint does not include specific allegations about ████████, it is
similarly likely that because ████████ is headquartered in Washington, individuals associated
with ████████ that are located outside of California will be required to testify.

[9] For example, CureIS identifies five potential witnesses from ████████████ alone
(Sawotin Decl. ¶ 13) despite that ████████████ was never a CureIS customer and the
allegations related to it occurred only during a six-month period (Compl. ¶¶ 47-50).  For three of
the five witnesses, CureIS does not even identify their titles or what non-duplicative testimony
each will provide (Sawotin Decl. ¶ 13), which is insufficient.  *See Saleh v. Titan Corp.*, 361 F.
Supp. 2d 1152, 1165 (S.D. Cal. 2005) (rejecting list of non-party witnesses where plaintiff failed
to establish they were "likely to have information relevant and material to their case").

1    Court's ability to compel their participation in this case.  *See* Fed. R. Civ. P. 45(c)(1)(A)-(B).

2    Even in the Northern District of California, non-party witnesses relevant to this action (including

3    out of state witnesses from non-parties based in California, such as ███████████ (Sawotin

4    Decl. ¶ 12)) are beyond this Court's subpoena power.  Moreover, CureIS has not argued that any

5    non-party witness within California would refuse to testify were this case transferred, which

6    renders a court's subpoena power irrelevant to the analysis.  *See Stanbury Elec. Engin., LLC v.*

7    *Energy Prods., Inc.*, No. C16-0362JLR, 2016 WL 3255003, at *7 (W.D. Wash. June 13, 2016)

8    ("A court's subpoena power is only relevant if non-party witnesses within the state will likely

9    refuse to testify"); *Sorensen*, 2003 WL 1888866, at *4 (explaining that where neither party

10   asserts that any non-party witness is unwilling to travel, the analysis favors neither party).

11   Similarly, CureIS does not explain why non-party testimony could not be taken at deposition and

12   offered at trial, which would eliminate CureIS's concern that transfer would "insulat[e] relevant

13   evidence from [the] judicial process" (Opp. 14).  *See Nortek Prods. (Taichang) Ltd. v. FAIP*

14   *North Am., Inc.*, No. C-10-0810 MMC, 2010 WL 1838934, at *3 (N.D. Cal. May 4, 2010)

15   (Chesney, J.) (finding analysis neutral where party did not explain why witness testimony "could

16   not be taken at a deposition and offered at trial").

17        Epic Witnesses Are Located in the Western District of Wisconsin.  By contrast, CureIS

18   ignores the reality, as demonstrated by its own allegations, that the clear majority of the

19   witnesses needed in this case will be Epic employees—all of whom are located in Wisconsin.

20   (*See* Mot. 4-6, 11-12.)  For example, as set forth in the Peterson Declaration—which CureIS

21   does not dispute—individual Epic employees such as the BFFs and TCs assigned to each

22   customer named in the Complaint will need to testify about their communications and

23   engagement with each of those customers.  (Peterson Decl. ¶¶ 13-21.)  This alone adds up to

24   19 Epic employees (*id.* ¶¶ 15-21), without accounting for the anticipated Epic employee

25   witnesses with Tapestry-specific knowledge or those from Epic's Consultant Relations, Vendor

26   Relations, and Technical Communications teams.  (*Id.* ¶¶ 11, 22-23; Mot. 4-6, 11-12.)

27   Strikingly, CureIS also ignores that Epic witness testimony will be critically important to

28   resolving their claims, which courts consider when assessing convenience of witnesses.

*McGucken*, 2023 WL 4206107, at *2-3.[10]  When compared with the non-party witnesses identified by CureIS—about many of whom CureIS makes only conclusory allegations and which are located throughout the country—it is apparent that the vast majority of witnesses, and particularly those witnesses whose testimony will be most important to this action, are based in, or at least closer, to the Western District of Wisconsin.  *See Bhatia*, 2023 WL 4937325, at *8 (recognizing case should proceed in district that is the "center of gravity").

    <u>CureIS's CEO and COO Are In Wisconsin, and Its Other Employees Live Throughout the Country.</u>  CureIS asserts that "many key CureIS witnesses reside in either California or locations that are closer to California than Wisconsin."  (Opp. 10.)  But its own Declaration contradicts this representation, particularly because its own CEO and COO, who are the only CureIS employees referenced by name in the Complaint, live *within the judicial district to which Epic seeks to transfer this litigation*.  (Sawotin Decl. ¶ 9 (identifying COO as residing in Hudson, Wisconsin); *id.* at 5 (CEO executing declaration in Grantsburg, Wisconsin).)[11]  In its Opposition, CureIS identifies only two CureIS employees in California—both of whom are located hundreds of miles away from this district.  (*Id.* ¶¶ 8-9 (identifying employees in Norco, California and Pasadena, California).)  The remaining employees CureIS identifies are located throughout the country and substantial distances from both districts.  (*Id.* (identifying employees in Arizona, Tennessee, and Texas).)  Two critical C-suite CureIS witnesses live in Wisconsin and the remaining CureIS witnesses, to the extent any will testify, live throughout the country.

    Accordingly, because the vast majority of party witnesses, including key CureIS witnesses, are concentrated in Wisconsin, and non-party witnesses are located throughout the

---

[10] For example, CureIS asserts in its "tale" that it was harmed through Epic's purported adoption and implementation of an "Epic-First Policy".  (Compl. ¶¶ 5, 39, 50, 57, 119, 136.)  Epic testimony regarding whether such a policy exists and if so, its scope and nature, will be the most important evidence in determining whether Epic's actions are unlawful in some way.

[11] Although Mr. Sawotin claims that litigating in the Northern District of California would be "more convenient for [himself]", his declaration offers no reason why that is the case, especially given that he resides in Wisconsin and CureIS's sole physical office is in Arizona. (Sawotin Decl. ¶¶ 3, 16.)  The Court need not credit "facially implausible" and self-serving declarations of this nature.  *Stoll v. Rimini St., Inc.*, No. 21-cv-01930-JST, 2021 WL 6618642, at *4 (N.D. Cal. Sept. 14, 2021); *see also Bridges*, 2020 WL 4937505, at *7.

country, the convenience of witnesses overall favors transfer. *McGucken*, 2023 WL 4206107,

at *3 (finding convenience of witnesses favored transfer where many potential witnesses resided

in or closer to transferee district); *see also Am. Trading Int'l, Inc. v. MCF Operating, LLC*,

No. CV 19-5851-JFW(PLAx), 2019 WL 6139113, at *2 (C.D. Cal. Sept. 24, 2019) (finding

transfer appropriate where party witnesses were largely all located closer to transferee district).[12]

      D.    <u>The Ease of Access to Evidence Weighs in Favor of Transfer.</u>

      Where, as here, the transferee forum is "the district in which most of the documentary

evidence is stored", this factor favors transfer. (Mot. 15 (quoting *Park v. Dole Fresh Vegetables,*

*Inc.*, 964 F. Supp. 2d 1088, 1095 (N.D. Cal. 2013)).) Neither of CureIS's arguments to the

contrary have merit. *First*, CureIS argues that "[a]ccess to proof favors keeping the case in

California" because "at least ten important non-party witnesses . . . live and work in

California".[13] (Opp. 14.) This argument is a repeat of the convenience of witnesses argument,

which, for the reasons explained above, is unavailing.[14] (*See supra* Section II.C.) *Second*,

CureIS argues that the advent of electronic discovery obviates consideration of this factor.

---

[12] CureIS does not dispute that *Am. Trading* recognizes that transfer is appropriate where many witnesses are "located closer" to the transferee district, but instead merely disputes Epic's assessment that the critical witnesses in the case are located in or closer to the Western District of Wisconsin. (Opp. 12 n.6.) But CureIS's argument ignores the 19 Epic employees located in Wisconsin that Epic identified (Peterson Decl. ¶¶ 15-21), as well as CureIS's own CEO and COO, who are both based in Wisconsin.

[13] CureIS's related assertion that no "CureIS witness resides in Wisconsin" (Opp. 14) is directly contradicted by Mr. Sawotin's declaration that he executed in Wisconsin (Sawotin Decl. at 5) and his representation that Bret Randolph "resides in Hudson, Wisconsin" (*id.* ¶ 9).

[14] CureIS's argument that live witness testimony and non-party documentary evidence makes "California the superior forum for evidence access" (Opp. 15 n.7) is unconvincing, for the same reasons explained in Section II.C. Witness testimony can be obtained through remote depositions or through travel to the witnesses' location, which Epic has already stated its willingness to do. (Mot. 14.) As for documents, CureIS includes no allegations that non-party documents are actually located in the Northern District of California, and courts do not credit bare assertions of this nature. *See Hyundai Motor Co. v. Hyundai Tech. Grp., Inc.*, No. 23-cv-01410-JST, 2023 WL 11950485, at *4 (N.D. Cal. Sept. 10, 2023).

1   (Opp. 14-15.)  That argument ignores the recent decisions in this district that continue to apply

2   this factor.  *See, e.g.*, *Hyundai Motor Co.*, 2023 WL 11950485, at *3.[15]

3            E.       The Districts Are Equally Capable of Applying Applicable Law.

4            "[R]equiring a court to apply another forum's law does not weigh against transfer."

5   *Clark v. VIP Petcare, LLC*, No. 22-cv-08935-AMO, 2023 WL 8459928, at *5 (N.D. Cal. Dec. 6,

6   2023).  CureIS attempts to dispute this basic principle by arguing that the Northern District of

7   California has a high volume of cases involving its state law causes of action.  (Opp. 16.)  But

8   this is not the relevant inquiry.  In fact, a similar argument has been rejected in this district as

9   "legally untenable".  *Skyriver Tech. Sols., LLC v. OCLC Online Comput. Libr. Ctr., Inc.*, No. C

10  10-03305 JSW, 2010 WL 4366127, at *5 (N.D. Cal. Oct. 28, 2010) (rejecting argument that this

11  district was more familiar with antitrust claims at issue "due to the greater number of antitrust

12  filings in this district").  Moreover, federal courts in California have explicitly found that other

13  federal courts are "adept at applying various state law claims of unfair competition and deceptive

14  trade practices" and that such claims are "not especially complex or specialized".  *Barnstormers,*

15  *Inc. v. Wing Walkers, LLC*, No. 09-cv-2367 BEN (RBB), 2010 WL 2754249, at *3 (S.D. Cal.

16  July 9, 2010).  As the Western District of Wisconsin is "fully capable of adjudicating claims that

17  arise under California law",[16] this factor is neutral.  *Skyriver Tech. Sols., LLC*, 2010 WL

18  4366127, at *5.

19           F.       The Western District of Wisconsin Has a Strong Interest in the Controversy.

20           CureIS does not dispute that the Western District of Wisconsin has a strong local interest

21  in this case because Epic is headquartered in Wisconsin and employs "a substantial number of its

22

23           [15] CureIS's criticism of the cases Epic cited on this factor issue as "outdated" (Opp. 15 n.7)
     is misplaced.  The cases Epic cites were from 2019 through as recently as 2022, well after the
24   advent of electronic discovery, and continued to apply this factor.  (*See* Mot. 15 (citing, *e.g.*,
     *Kitzler v. Nelnet Servicing, LLC*, No. CV 22-6550-MWF (KS), 2022 WL 18284983, at *4 (C.D.
25   Cal. Nov. 1, 2022)).)

26           [16] CureIS asserts—without any factual support—that its contracts with "California
     customers contain California choice-of-law and forum-selection clauses".  (Opp. 15-16.)  But
27   given that Epic is not a party to these agreements and CureIS has failed to explain their relevance
     otherwise, that assertion is irrelevant to the analysis.
28

citizens." *Rabinowitz*, 2014 WL 5422576, at *7. Instead, CureIS attempts to distinguish certain cases cited in Epic's Motion (Opp. 15 n.8) and makes generalized arguments that California has an interest in protecting healthcare businesses in its state from purported unfair competition and false advertising (*id.* at 18). Neither response withstands scrutiny.

*First*, CureIS argues that *Romoff v. Johnson & Johnson Consumer Inc.*, No. 22-cv-75-LL-WVG, 2022 WL 3905301 (S.D. Cal. Aug. 26, 2022), is inapposite because California has dual interests—protecting its own businesses and safeguarding its healthcare system. (Opp. 15 n.8.) As an initial matter, these interests are not distinct, as the businesses California is purportedly protecting *are* healthcare businesses within its healthcare system. Moreover, *Romoff* still determined that this factor favored transfer because the "primary focus of th[e] action" was the defendant's conduct in the proposed transferee district related to the marketing of its products. 2022 WL 3905301, at *6. That same basis supports transfer here. Moreover, while CureIS attempts to distinguish *Lightspeed Aviation, Inc. v. Bose Corp.*, No. 10-CV-239-BR, 2010 WL 3928624 (D. Or. Oct. 1, 2010), on the basis that "California jurors have [a] direct interest in their healthcare system" (Opp. 15 n.8), the court there concluded that jurors in a state in which a product was sold had no special interest where the same was true of "many other states throughout the country". 2010 WL 3928624, at *4.[17]

*Second*, California's interest in this litigation is nominal at best, and its general interest in "enforcing its consumer protection laws and ensuring fair business practices within its borders" (Opp. 18) does not favor keeping this case in the Northern District of California. As explained in *Romoff*, "California's interest in applying its law to residents of foreign states is attenuated at best". 2022 WL 3905301, at *6. Further, as courts have repeatedly recognized, where both parties to the litigation are foreign, "there is a local interest in resolving the controversy at home" and the transferor district "has absolutely no interest in the controversy". *Baird v. OsteoStrong Franchising, LLC*, No. 2:20-cv-02010-TLN-DMC, 2022 WL 705883, at *6 (E.D. Cal. Mar. 9,

---

[17] CureIS also discusses *Trueforce Glob. Servs., Inc. v. TruEffect, Inc.*, No. C 20-0080 SBA, 2020 WL 11231812 (N.D. Cal. June 1, 2020), (Opp. 15 n.8), but Epic does not cite *TrueForce* in its argument about Wisconsin's local interest in the controversy (Mot. 16-17).

2022); *see also Hunt v. Ameritas Life Ins. Co.*, No. 19-CV-01657-JSW, 2019 WL 7666755, at *4 (N.D. Cal. Sept. 25, 2019).

  G. <u>Relative Court Congestion Weighs in Favor of Transfer.</u>

  CureIS does not—and cannot—dispute that a trial in this matter may be speedier in the Western District of Wisconsin because of its less crowded docket. (*See* Mot. 17-18.) Where cases can be resolved far faster in the proposed transferee forum, that weighs in favor of transfer. *See, e.g.*, *Hinze v. Tesla, Inc.*, No. 22-cv-02944-AMO, 2024 WL 4607696, at *2 (N.D. Cal. Oct. 28, 2024).

  CureIS's attempts to diminish the significance of this factor are unavailing. *First*, CureIS relies on two cases from the 1980s to suggest that court congestion is not a valid factor. (Opp. 17.) But CureIS itself explicitly cites court congestion as one of the factors that courts consider (*see id.* at 7), and courts in this district continue to consider court congestion as a factor. *See, e.g.*, *Civello v. Equinix, Inc.*, No. 24-cv-08803-JSW, 2025 WL 660247, at *4 (N.D. Cal. Feb. 28, 2025) (finding that court congestion factor weighed in favor of transfer). *Second*, CureIS argues that the Northern District of California is not so congested that it cannot handle this case. (Opp. 17.) But that is not the relevant inquiry. Even if this district could "handle" the case, trial likely would be speedier in the Western District of Wisconsin because of its less crowded docket. (Mot. 17-18.) *Third*, CureIS relies on a 30-year old report and recommendation to argue that this factor should not displace a plaintiff's choice of forum. (Opp. 17 (citing *Linear Tech. Corp. v. Analog Devices, Inc.*, No. C-94-3988-THE (WDB), 1995 WL 225672 (N.D. Cal. Mar. 10, 1995)).) But in that case, every factor *except* time to trial weighed against transfer. *Linear Tech.*, 1995 WL 225672, at *1-4. Here, by contrast, all of the Section 1404(a) factors favor Epic, and court congestion is one of many factors supporting transfer.

## <u>**CONCLUSION**</u>

  For the foregoing reasons, Epic respectfully requests that the Court grant its Motion and transfer this action to the Western District of Wisconsin.

Defendant's Reply in Support of Motion to Transfer Venue  Case No. 3:25-cv-04108-MMC

1

Dated:  July 10, 2025

2

Respectfully submitted,

3

By:    */s/ Lauren A. Moskowitz*_____

4

**CRAVATH, SWAINE & MOORE LLP**

5

Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com

6

Lauren M. Rosenberg (*pro hac vice*)
lrosenberg@cravath.com

7

375 Ninth Avenue

8

New York, New York 10001
Telephone:  (212) 474-1000

9

Facsimile:  (212) 474-3700

10

**AKIN GUMP STRAUSS HAUER & FELD
LLP**

11

12

Robert Salcido (SBN 139138)
rsalcido@akingump.com

13

4 Park Plaza, Suite 1900
Irvine, California 92614

14

Telephone:  (949) 885-4100
Facsimile:  (949) 885-4101

15

16

*Attorneys for Defendant Epic Systems
Corporation*

17

18

19

20

21

22

23

24

25

26

27

28

Defendant's Reply in Support of Motion to Transfer Venue          Case No. 3:25-cv-04108-MMC