QUINN EMANUEL URQUHART & SULLIVAN, LLP
Adam Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
Ryan S. Landes (Bar No. 252642)
  ryanlandes@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

Paulina Slagter (Bar No. 318559)
  paulinaslagter@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone:     (650) 801 5000
Facsimile:     (650) 801 5100

*Attorneys for Plaintiff CureIS Healthcare, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CureIS Healthcare, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> Epic Systems Corporation, <br><br> Defendant. | Case No. 3:25-cv-04108-MMC <br><br> **PLAINTIFF CUREIS HEALTHCARE INC.'S OPPOSITION TO DEFENDANT EPIC SYSTEMS CORPORATION'S MOTION TO PARTIALLY UNSEAL THE COMPLAINT** <br><br> *[Filed concurrently with the Declaration of Christopher Sawotin in Opposition to Defendant's Motion to Partially Unseal; Proposed Order]* <br><br> Judge:     Hon. Maxine M. Chesney <br><br> Trial Date:     None Set |

**ISSUES TO BE DECIDED**

Pursuant to Local Civil Rule 7-4(a)(3), CureIS identifies the following issues to be decided:

1. Whether the Court should deny Defendant Epic Systems Corporation's Motion to Partially Unseal CureIS Complaint because it did not seek to leave to file a motion for reconsideration per Local Rule 7-9, and does not explain why the Court should revisit its previous ruling sealing these exact same items?

2. Whether (if the Court revisits its May 13, 2025 Order) there are compelling reasons to seal CureIS's customer identities, customer employee names, and confidential negotiation information, given CureIS's requests to seal this information are narrowly tailored, cover information that has never been publicly disclosed, and would lead to competitive harm if refused?

## TABLE OF CONTENTS

| | Page |
|---|---:|
| INTRODUCTION | 1 |
| FACTUAL BACKGROUND | 2 |
| LEGAL STANDARD | 4 |
| ARGUMENT | 5 |
|     A.  Epic's Motion Should Be Denied for Failure to Comply with Local Rule 7-9 | 6 |
|     B.  This Court Was Correct In Its Assessment That CureIS Has Compelling Reasons For Protecting Customer Identities | 7 |
|     C.  The CureIS Materials Epic Cites Do Not Disclose The Information Sealed in CureIS's Complaint | 9 |
|     D.  The Public's Interest Does Not Outweigh CureIS's Compelling Interest in Protecting Its Customer Relationships and Confidential Business Information | 10 |
| CONCLUSION | 13 |

# TABLE OF AUTHORITIES

**Page**

### Cases

*BBK Tobacco & Foods LLP v. Skunk Inc.*,
 2020 WL 6940811 (D. Ariz. Nov. 25, 2020) ............................................................... 7, 8

*CreAgri, Inc. v. Pinnaclife Inc.*,
 2014 WL 27028 (N.D. Cal. Jan. 2, 2014) ....................................................................... 4

*Exeltis USA Inc. v. First Databank, Inc.*,
 2020 WL 2838812 (N.D. Cal. June 1, 2020) .................................................................. 8

*Finisar Corp. v. Nistica, Inc.*,
 2015 WL 3988132 (N.D. Cal. June 30, 2015) ................................................................ 4

*Finjan, Inc. v. Cisco Sys. Inc.*,
 2019 WL 4168952 (N.D. Cal. Sept. 3, 2019) ......................................................... 4, 6, 10

*Flextronics Int'l USA, Inc. v. Murata Mfg. Co., Ltd.*
 2019 WL 13554029 (N.D. Cal. Dec. 16, 2019) ....................................................... 4, 6, 9

*In re Electronic Arts, Inc.*
 298 F. App'x. 568 (9th Cir. 2008) ............................................................................ 4, 11

*In re Google Location Hist. Litig.*,
 514 F. Supp. 3d 1147 (N.D. Cal. 2021) .......................................................................... 5

*Jaroslawsky v. City & Cnty. of San Francisco*,
 2015 WL 13359891 (N.D. Cal. Apr. 6, 2015), aff'd, 671 F. App'x 998 (9th Cir. 2016) ................................................................................................................................. 7

*Kamakana v. City & Cnty. of Honolulu*,
 447 F.3d 1172 (9th Cir. 2006) ................................................................................ 11, 12

*Mezzadri v. Med. Depot, Inc.*,
 2015 WL 12564223 (S.D. Cal. Dec. 18, 2015) .............................................................. 6

*Milan v. Clif Bar & Co.*,
 489 F. Supp. 3d 1004 (N.D. Cal. 2020) .......................................................................... 7

*Nixon v. Warner Communs., Inc.*,
 435 U.S. 589 (1978) ...................................................................................................... 11

*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*,
 307 F.3d 1206 (9th Cir. 2002) ...................................................................................... 10

*Simpson Strong-Tie Co. Inc. v. MiTek Inc.*,
 2023 WL 9187547 (N.D. Cal. Dec. 15, 2023) .............................................................. 12

*Sumotext Corp. v. Zoove, Inc.*,
  No. 16-CV-01370-BLF, 2020 WL 836737 (N.D. Cal. Feb. 20, 2020) .................................. 4

*Weiss v. Sovereign Nation of Afghanistan*,
  2023 WL 8530506 (N.D. Cal. Nov. 21, 2023) ....................................................................... 12

## **Other Authorities**

Local Rule 7-9 ......................................................................................................... 1, 5, 6, 7

Local Rule 7-9(a) ............................................................................................................ 6, 7

Local Rule 7-9(b) ................................................................................................................ 5

Plaintiff CureIS Healthcare Inc. ("CureIS") respectfully requests that the Court deny Defendant Epic Systems Corporation ("Epic")'s motion to partially unseal CureIS's complaint.

## INTRODUCTION

Epic's motion to partially unseal argues that CureIS fails to show "compelling reasons" to protect its own and its customers' confidential information. In support, Epic cites announcements from 2009 and 2014 and a 2015 Twitter post—none of which disclose the same information sealed in the complaint. Further, this Court has already found CureIS's redactions are narrowly tailored and satisfy the "compelling reasons" standard. (May 13, 2025 Order Granting Administrative Motion to File Under Seal ("Order") at 1.) Contrary to Civ. L.R. 7-9, Epic did not seek leave of the Court to reconsider that Order; nor does it provide any reasons under the reconsideration standard to revisit the Court's plain ruling—indeed, it does not even mention "reconsideration" once. For that reason alone, Epic's request to reverse the Court's previous ruling and reveal the names of CureIS's customers, their employees, and the terms of confidential contracts and sensitive negotiations should be denied.

On the substance of its arguments, however, Epic still fails, and the motion itself demonstrates the ruthlessness that gave rise to this lawsuit in the first place. At issue are: customer identities all parties agree CureIS *never* publicly disclosed; names of employees from those confidential customers; and the contents of an indisputably confidential CureIS business proposal. Epic argues any competitive harm to CureIS from disclosing this information is "speculative," even though CureIS alleges explicitly that Epic exploited CureIS's confidential customer information to sabotage CureIS's contractual relationships. (See Dkt. 4, "Compl.") Epic never addresses why other competitors could not do the same with this same information. Epic also ignores the *in terrorem* effect of forcing public disclosure of witness identities from clients that understand they are in a confidential relationship with their employer and CureIS. And, of course, a confidential business proposal obviously carries with it the potential for competitive harm, if disclosed publicly. CureIS suspects Epic would not want its confidential business presentations disclosed in that way, yet it demands that CureIS's similar information be broadcast to the world.

-1-
Case No. 3:25-cv-04108-MMC
PLAINTIFF'S CUREIS'S OPPOSITION TO DEFENDANT'S MOTION TO PARTIALLY UNSEAL

As support for its arguments, Epic relies on outdated webpages—retrieved via the Wayback Machine and referencing product launches from over a decade ago—to argue CureIS does not have confidential information. In the process, Epic ignores that CureIS remains bound by current, enforceable confidentiality obligations to the customers whose names it redacted. (Sawotin Decl. ¶ 9.) That Epic resorts to the Wayback Machine to support its claim is telling—the exhibits attached to Epic's declaration do not reflect current CureIS webpages and do not disclose events or contracts from the relevant time period. Instead, they reflect a joint marketing campaign with customers who expressly authorized the use of their name and involving product information CureIS publicly advertises (as opposed to confidential information it shares under NDA with clients). Also telling: Epic purports to attach ten separate exhibits identifying customers in support of its motion to unseal (Moskowitz Decl., Exs. A-H, J), but eight of those exhibits are merely the same two webpages—screenshotted four different times—that are both no longer available and never disclosed the specific confidential information CureIS already obtained permission from the Court to seal.

There are ample compelling reasons to seal CureIS's confidential information at this time and Epic's efforts to prevent narrowly tailored and routine sealing are somewhat baffling. Even if it were not a blatantly improper motion for reconsideration brought in violation of Civ. L.R. 7-9, Epic's motion should still fail on the merits.

## FACTUAL BACKGROUND

CureIS filed its complaint on May 12, 2025 (*see* Dkt. 4, ("Complaint")). In its initial administrative motion for leave to file its complaint under seal ("Mot. to Seal"), CureIS argued that it met the "compelling reasons" standard in seeking to seal confidential customer identities, the existence and terms of confidential contracts, and non-public contract negotiations. (*See* Mot. to Seal at 2.) CureIS also attached the sworn declaration of its CEO attesting to the harm CureIS is likely to face if the information it sought to seal is publicly disclosed[1] and the reasonable security

---

[1] CureIS's CEO has personal knowledge of the particularized harms CureIS is likely to face, including enabling competitors to solicit CureIS's customers, disrupting relationships between CureIS and its customers, and gaining access to non-public information. (*Contra* Mot. to Seal at 2-3.)

measures implemented by CureIS to maintain confidentiality of competitively sensitive information. (Declaration of Christopher Sawotin In Support of CureIS's Opposition to Epic's Motion to Partially Unseal ("Sawotin Decl.") ¶ 5.) As a result, on May 13, 2025, this Court issued its order granting CureIS's Motion to Seal and stated that "[p]rotecting confidentiality interests and safeguarding against competitive harm constitute compelling reasons that justify sealing." (Order at 1.)

In its motion, Epic argues that CureIS cannot seal its customers' names, names of employees from those customers, or information contained in a confidential business proposal from CureIS to its customers. (Mot. at 7.) It claims CureIS made categorical disclosures of this type of information because a ▆▆▆▆▆▆▆▆▆▆ at issue in CureIS's complaint appeared on a past version of CureIS's website and in 2014 and 2015 marketing materials. (Mot. at 9.) There is critical other information about these disclosures, however, that Epic either does not know or intentionally withholds from its motion.

First, the specific disclosures Epic relies on were authorized by the CureIS customers in question. (*See* Moskowitz Decl., Exs. D, H, I.) The archived webpage Epic cites referencing product deployments in 2009 and 2014 (and the 2015 Twitter post referencing the same) were part of joint marketing efforts consented to by the organizations referenced therein. (Sawotin Decl. ¶ 3, 8.) Unlike the "disclosures" reflected in the archival webpages and 2015 Twitter post (Exs. D, H, I), CureIS's customers did not authorize CureIS to publicly disclose the existence of the specific confidential contracts Epic disrupted, competitively sensitive product implementation timelines, internal concerns about Epic, or the identities of employees involved in those communications. (Sawotin Decl. ¶ 6.) Epic does not provide any evidence refuting the simple fact that a customer can authorize disclosure of its name for one purpose, and not for another—particularly when the relationship in question is governed by an NDA.

Second, Epic's Exhibits A through H—screenshots of CureIS's now-defunct "In Practice" and "EnrollmentCURE" webpages originally published in 2014 and removed in 2022—do not reveal any of the information CureIS has redacted in its complaint. They do not disclose the status or nature of CureIS's customer relationships in the relevant time period, do not reference or disclose the contents of the subject subscription license agreements, do not disclose the names of customers'

employees, and do not disclose the substance of any sensitive internal discussions and negotiations. In other words, the materials Epic advances as its sole support for unsealing CureIS's complaint do not reveal any of the specific information currently under seal in CureIS's complaint. (Sawotin Decl. ¶ 10.)

## LEGAL STANDARD

The Ninth Circuit has expressly recognized that sealing is appropriate under the "compelling reasons" standard where disclosure of confidential information, especially sensitive contract negotiations, could be exploited by competitors. (*See In re Electronic Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008); *Sumotext Corp. v. Zoove, Inc.*, No. 16-CV-01370-BLF, 2020 WL 836737, at *3 (N.D. Cal. Feb. 20, 2020) ("Closely-negotiated or customer-specific terms are sealable under Ninth Circuit law as they could be used by competitors to undercut [CureIS]").) Courts also regularly seal customer lists, internal discussions regarding sensitive contract negotiations, and contracts that contain confidential business information. (*See Finisar Corp. v. Nistica, Inc.*, 2015 WL 3988132, at *5 (N.D. Cal. June 30, 2015).)

Under this standard, courts routinely distinguish between public materials and confidential customer data—sealing the latter.[2] (*See Flextronics Int'l USA, Inc. v. Murata Mfg. Co., Ltd.*, 2019 WL 13554029, at *2 (N.D. Cal. Dec. 16, 2019) (granting sealing of customer identities); *Finjan, Inc. v. Cisco Sys. Inc.*, 2019 WL 4168952, at *2 (N.D. Cal. Sept. 3, 2019).) Courts do so by assessing confidentiality in a context-specific manner. (*See, e.g., Finjan*, 2019 WL 4168952, at *2 (recognizing the sensitivity of proprietary business context even when some product information had previously been disclosed).)

---

[2] Epic cites *CreAgri, Inc. v. Pinnaclife Inc.*, 2014 WL 27028, at *2 (N.D. Cal. Jan. 2, 2014) for the proposition that sealing should be denied in this case. In *CreAgri*, the court denied sealing after the allegedly confidential information was openly discussed in court, and where the movant failed to explain why sealing was necessary. Here, by contrast, CureIS has never disclosed the specific information sealed in its complaint, and CureIS's CEO has offered detailed evidence of why public disclosure would be competitively harmful.

# ARGUMENT

Epic's motion to unseal rests on three core arguments: (1) that CureIS fails to meet the "compelling reasons" standard to seal customer names, the names and contact information of customer employees, or terms of sensitive negotiations or confidential contracts; (2) that CureIS's rationale for sealing is undermined by its own prior public disclosures of customer names; and (3) that the public interest favors unsealing, particularly where CureIS has publicized its claims. (Mot. at 7, 8, 12.) Epic's arguments fail for at least four independent reasons.

***First***, and significantly, Epic's motion should be denied because it is an improper motion for reconsideration and fails to comply with the strict requirements imposed by this District's Local Rules and applicable law. Under Local Rule 7-9, "[n]o party may notice a motion for reconsideration without first obtaining leave of Court." Epic has not sought, let alone obtained, leave to file such a motion. On this basis alone, the motion should be denied. Even if Epic had obtained leave of Court, Epic cannot satisfy the substantive requirements for reconsideration. Epic fails to show a material difference in fact or law from that presented to the Court before entry of the challenged order, the emergence of a new material fact or change or law after the order, or a manifest failure by the Court to consider material facts or dispositive legal arguments. (L.R. 7-9(b).) Epic identifies none. Instead, Epic rehashes the arguments the Court already considered when it granted CureIS's administrative motion to seal limited portions of its complaint. (Dkts. 2, 23, 24.) Epic's disagreement with the Court's order is not a proper basis for reconsideration. Epic's motion to unseal CureIS's complaint should be denied for this reason alone.

***Second***, and in any event, as this Court already recognized in granting CureIS's administrative motion to seal, the limited redactions in CureIS's publicly filed complaint—consisting of customer names, customer-employee names and email addresses, one customer address, and a single sentence in a confidential proposal—easily satisfy the "compelling reasons" standard. (Order at 1.)

***Third***, the disclosures Epic relies on—attached as Exhibits A through H and J to its unsealing motion—do not disclose any of the information currently redacted in the complaint. None of the cited materials reveal the existence or terms of the contracts at issue in the complaint, the customer

interactions during the relevant period, or the development and implementation timelines for products that have yet to be launched. (*See In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1162 (N.D. Cal. 2021) ("Compelling reasons may exist to seal … product development plans [and] customer information").) Epic's motion relies entirely on these outdated materials. Because those exhibits do not contain—let alone publicly disclose—the specific confidential information that CureIS has redacted in its complaint (and Epic cannot show otherwise), Epic's motion to unseal should be denied.

*Fourth*, the public's interest in judicial transparency is fully protected by CureIS's narrowly tailored redactions. CureIS has sealed only discrete categories of information that, if disclosed, would cause CureIS and its customers immediate competitive harm. Courts routinely permit the sealing of this type of commercially sensitive information. (*See, e.g., Flextronics Int'l USA, Inc. v. Murata Mfg. Co., Ltd.*, 2019 WL 13554029, at *2 (N.D. Cal. Dec. 16, 2019) (granting sealing of "confidential customer identities"); *Mezzadri v. Med. Depot, Inc.*, 2015 WL 12564223, at *2 (S.D. Cal. Dec. 18, 2015) (sealing customer lists); *Finjan*, 2019 WL 4168952, at *2 (sealing material revealing confidential information about product functionality).)

### A. Epic's Motion Should Be Denied for Failure to Comply with Local Rule 7-9

Epic's motion to unseal CureIS's complaint is, in substance, an improper motion for reconsideration. Without explicitly saying so, Epic effectively asks the Court to reconsider its holding that CureIS's customer names, the names of CureIS's customers' employees, and one sentence from a confidential proposal in the "Complaint shall be filed under seal." (Order at 1.)

But Local Rule 7-9(a) first requires leave of Court before a party may notice a motion for reconsideration. (*See* Civ. L.R. 7-9(a) ("No party may notice a motion for reconsideration without first obtaining leave of Court to file the motion.").) As noted, Epic has not sought (nor obtained) leave of Court to request reconsideration of the May 13, 2025 Order.

On the merits, Epic identifies no changed circumstances or new facts that undermine this Court's prior findings that: (a) "Plaintiff seeks to redact the names of its customers in order to maintain the confidentiality of non-public contractual relationships, and to redact portions of the complaint that reveal communications during confidential negotiations"; (b) "Protecting

-6- Case No. 3:25-cv-04108-MMC
PLAINTIFF'S CUREIS'S OPPOSITION TO DEFENDANT'S MOTION TO PARTIALLY UNSEAL

confidentiality interests and safeguarding against competitive harm constitute compelling reasons that justify sealing"; and (c) "Plaintiff's request is narrowly tailored to redact only limited information, leaving the majority of the Complaint available for public access." (Order at 1; *see Jaroslawsky v. City & Cnty. of San Francisco*, 2015 WL 13359891, at *3 (N.D. Cal. Apr. 6, 2015), aff'd, 671 F. App'x 998 (9th Cir. 2016) (denying motion as improper motion for reconsideration where plaintiff "fail[ed] to identify any facts that were not before the Court" when it rendered its prior ruling).)

Nor does Epic identify any intervening legal authority. None of the cases Epic cites were decided between the Court's May 13, 2025 Order granting CureIS's sealing request and the filing of Epic's motion on June 30, 2025. (*See* Motion (generally).) Because Epic failed to seek leave of Court as required under Local Rule 7-9(a) and fails to satisfy any of the Rule's substantive requirements, its motion should be denied on this basis alone. (*Milan v. Clif Bar & Co.*, 489 F. Supp. 3d 1004, 1008 (N.D. Cal. 2020) (denying Clif Bar's motion to strike class allegations because "[n]othing has changed since" its prior request, and thus, its "renewed request is effectively an improper motion for reconsideration.").)

Although CureIS maintains that Epic's motion cannot be considered until it complies with Local Rule 7-9, given the importance of maintaining the limited sealing of certain customer information in CureIS's complaint to CureIS's and CureIS's customers' operations, CureIS addresses the substance of Epic's arguments in the following sections.

### B. This Court Was Correct In Its Assessment That CureIS Has Compelling Reasons For Protecting Customer Identities

As this Court has already recognized, CureIS satisfies the "compelling reasons" standard and seeks only to protect a narrow set of confidential customer information. (Order at 1.) Nonetheless, Epic now argues that CureIS's justifications are "generalized" and "inadequate." (Mot. at 8.) The Court's May 13, 2025 Order was correct and should stand for at least three reasons.

***First***, none of the authorities Epic cites support its position, as CureIS's limited redactions are narrowly tailored and do not resemble the overbroad sealing requests rejected in those cases.[3] CureIS seeks to protect only: (1) customer names, (2) customer-employee names and contact information, (3) one customer's address, and (4) a single sentence from a confidential proposal. These redactions safeguard discrete information related to ongoing and prospective customer relationships. Courts have found customer names, competitive strategy, or sales positioning satisfy the "compelling reasons" standard. (*See BBK Tobacco & Foods LLP v. Skunk Inc*., 2020 WL 6940811, at *3 (D. Ariz. Nov. 25, 2020) ("BBK asserts that it keeps its customer identities secret, and the Court finds that release of this information would cause Plaintiff competitive harm that outweighs the policy in favor of public disclosure.").) Even without explicit pricing information, revealing customer identities in this context discloses sensitive sales efforts, business relationships, and implementation timelines. (*Exeltis USA Inc. v. First Databank, Inc*., 2020 WL 2838812, at *2 (N.D. Cal. June 1, 2020) (sealing "confidential and proprietary business, sales, or licensing information" which "could give non-party competitors an unfair advantage in the development or marketing of rival products.").) Epic itself has already competitively benefited from obtaining this precise confidential information. (*See e.g.,* Compl. ¶¶ 6, 56, 80, 82, 84.)[4]

***Second***, CureIS has already demonstrated the particularized harm that would result from disclosure. As explained in sworn declarations, Epic has previously used knowledge of CureIS's

---

[3] Epic cites *Open Text S.A. v. Box, Inc*., but in that case, the court rejected a "flood" of sealing requests described as "grossly overbroad" and unsupported by specific facts. (2014 WL 7368594, at *2.) CureIS's request, by contrast, is limited to a handful of redactions, supported by detailed declarations of the likelihood of competitive harm from the public disclosure of sealed information. Epic also cites *Yates v. Cheeseburger Rests., Inc*., but in that case, the defendant sought to seal an entire brief and failed to object when portions were later publicly filed without redaction. (2023 WL 4747431, at *2.) Here, CureIS has redacted only confidential customer information and has consistently maintained the confidentiality of such information. Epic also cites *Buhl v. Abbott Labs*., where the sealing request was denied because the parties provided no explanation for why the information merited sealing. (2019 WL 13248007, at *2.) CureIS has done the opposite—supporting its request with sworn declarations and specific factual context.

[4] Epic cites *In re Twitter Inc. Sec. Litig*., as support for unsealing CureIS's complaint. But in that case, the sealing request was denied because the moving party failed to show how disclosure would lead to competitive harm. 2020 WL 2519888, at *2. In contrast, CureIS has shown that Epic has already used similar information to harm its business. (Sawotin Decl. ¶ 11-12.)

confidential customer relationships to interfere with CureIS's business—pressuring customers to terminate negotiations and imposing its "Epic-first" policy to block CureIS's product deployments. (See Compl. ¶¶ 75–78; Sawotin Decl. ¶¶ 11-12.) These are not hypothetical harms. They already occurred. Disclosure of the same information now could invite further interference, disruption of customer relationships, and customer poaching—all examples of competitive harm that satisfy the "compelling reasons" standard. (*See Flextronics Int'l USA, Inc. v. Murata Mfg. Co., Ltd.*, 2019 WL 13554029, at *2 (N.D. Cal. Dec. 16, 2019) (granting motion to seal "as to confidential customer identities").)

**Third**, and as discussed, Epic's argument that CureIS must show prior disclosures also caused CureIS competitive harm is unsupported. CureIS's marketing references from 2009 or 2014—authorized jointly with the customers and unrelated to the more recent contract negotiations now at issue—pose no competitive threat today and have no bearing on the confidentiality of the information sealed in CureIS's complaint.

### C. The CureIS Materials Epic Cites Do Not Disclose The Information Sealed in CureIS's Complaint

Epic argues that because certain product releases involving ▮▮▮▮▮▮▮▮▮▮ appeared on a past version of CureIS's website and in a 2015 social media post, the confidential and competitively sensitive information in CureIS's complaint should be unsealed. Mot. at 9. Epic's argument is factually and legally incorrect.

As noted, the specific disclosures Epic relies on were expressly authorized by CureIS's customers at that time. (Sawotin Decl. ¶ 3, 7-8; Moskowitz Decl., Exs. D, H, I, J.) Those disclosures involved previous collaborations and not the current relationships at issue in CureIS's complaint. (*Id.* ¶ 3, 7-8.) CureIS's more recent relationships and proposals are governed by nondisclosure agreements it is not at liberty to publicly disclose. (*Id.* ¶ 9.) Had Epic asked CureIS about this before filing its motion to unseal, CureIS could have explained; however, Epic did not do so and thus CureIS could never provide that information in a meet and confer that would have mooted the need for the present motion practice.

Just as importantly, none of Epic's Exhibits reveal any of the information CureIS has redacted in its complaint. As discussed above, they do not reference the subject subscription license agreements, the names of customers' employees, or their sensitive internal discussions and negotiations. In other words, the materials Epic advances as its sole support for unsealing CureIS's complaint do not reveal any of the specific information currently under seal in CureIS's complaint. (Sawotin Decl. ¶ 10.)

Given these facts, CureIS respectfully submits that this Court was entirely correct in finding compelling reasons to seal this information, which has never seen the public light of day and is important for CureIS's ongoing relationships. (*See Flextronics Int'l USA, Inc. v. Murata Mfg. Co., Ltd.*, 2019 WL 13554029, at *2 (N.D. Cal. Dec. 16, 2019) (granting sealing of customer identities); *Finjan*, 2019 WL 4168952, at *2.) Indeed, context matters, and the context here—where CureIS's complaint alleges Epic's wrongful interference with specific customers in 2023, 2024, and 2025—is materially different than the public product launches and associated information in 2009, 2014, and 2015.

### D. The Public's Interest Does Not Outweigh CureIS's Compelling Interest in Protecting Its Customer Relationships and Confidential Business Information

Epic argues that "the public interest strongly supports disclosure of the critical facts underlying CureIS's Complaint," because CureIS cannot engage in a "public smear campaign" while "withholding critical information." (Mot. at 12–13.) To this end, Epic asserts that the significance of customers to this litigation somehow supports unsealing their confidential information. (*Id.*)

Epic's arguments are both hyperbolic and legally irrelevant. CureIS's decision to file a lawsuit is not a "smear campaign"—it is an exercise of CureIS's right to invoke the judicial process to seek redress. Nor is CureIS "withholding" critical facts the public needs to fully grasp Epic's wrongdoing. (*Id.*) The redacted complaint discloses the full substance of CureIS's allegations and more than satisfies the public interest in understanding the nature and basis of CureIS's claims.[5]

---

[5] CureIS has only redacted 1.47% of the words in its complaint. (Dkt. 4.)

Indeed, contrary to Epic's contention, there is no presumption of public access where, as here, "a court has already decided [information] should be shielded from the public." (*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002).) The minimal redactions—limited to customer names, employee names and contact information, and discrete details of confidential contract negotiations—do not prevent public scrutiny of CureIS's allegations regarding Epic's wrongful conduct. Courts routinely recognize that such targeted redactions, particularly where tied to ongoing business relationships and competitively sensitive information, are entirely appropriate. (*See, e.g., In re Electronic Arts*, 298 Fed. Appx. at 569 (finding compelling reasons for sealing "business information that might harm a litigant's competitive strategy").) This Court has already found that unsealing the customer names, employee identities, and details of confidential negotiations would pose a risk of competitive harm and violate third-party confidentiality obligations. (Order at 1.) Epic offers no reason—legal or factual—to revisit that determination.

As to Epic's argument that CureIS's complaint should be partially unsealed because "customer names are not just *tangentially* related to this case" (Mot. at 11), Epic does not explain how that assertion is relevant to the sealing analysis (it isn't).[6] The standard remains whether the redacted information is competitively sensitive and not readily accessible otherwise, not whether the sealed information is "important" to CureIS's claims.[7] Epic's argument would presume that the confidentiality of a less important agreement should be honored, while a confidentiality provision in a more important contract should be breached. Such a standard upholds the confidentiality of

---

[6] Epic confuses the legal standard. Courts consider whether a particular filing is "tangential" to the case when determining whether to apply the "good cause" or "compelling reasons" standard when evaluating motions to seal. (*See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1181 (9th Cir. 2006) (holding that sealing analysis is bifurcated between "compelling reasons" standard for documents attached to dispositive motions and "good cause" standard for documents attached to non-dispositive motions).) Here, because the complaint itself is non-tangential, everyone agrees the appropriate standard is the "compelling reasons" standard. Order at 1. Once information meets the "compelling reasons" standard—as the Court found CureIS's redactions do—there is no need for a further assessment of whether the sealed information is tangential (or central) to the claims, so long as the redactions are narrowly tailored. (*Id.*)

[7] It bears noting that CureIS, and all litigants, should always strive to include relevant and important information in pleadings before this Court.

tangential agreements but not "core" agreements. This makes no sense, and the law does not support that view.

The fact that Epic may want to name CureIS's customers in public to apply more pressure on CureIS's customers or discredit CureIS is not a legitimate interest nor an interest that should (or could) outweigh the compelling reasons for sealing identified in the Court's May 13, 2025 Order. (*Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (stating compelling reasons that outweigh the public's interest in disclosure exist when "court files might become a vehicle for improper purposes") (quoting *Nixon v. Warner Communs., Inc.*, 435 U.S. 589, 589 (1978)).) Even if Epic were able to articulate how the minimal, targeted redactions in CureIS's complaint prevent "the public at large" from assessing the merits of CureIS's claims, the concrete risk of harm to CureIS and its customers far outweighs Epic's asserted public interest in disclosure. The risk of harm to CureIS and its customers is neither speculative nor implausible. The risk of disruption to CureIS's customer relationships and competitive harm to CureIS and its customers is real and ongoing. The possibility that Epic might want to publicly name those customers to pressure them does not override that risk.

On this point, Epic's cited cases are easily distinguishable. For example, Epic cites *Simpson Strong-Tie Co. Inc. v. MiTek Inc.*, 2023 WL 9187547, at *2 (N.D. Cal. Dec. 15, 2023), but that case involved generic claims of harm unsupported by evidence, unlike here, where CureIS has identified specific customers, disclosed Epic's past interference with those relationships, and submitted sworn declarations explaining the risk of further competitive injury. (Sawotin Decl. ¶ 11-12.) CureIS has provided concrete, particularized evidence of harm if its confidential information is disclosed. Epic, by contrast, invokes the generalized interest of the "public at large" without explaining such a need in the context of a business dispute like this—in which both sides routinely seal confidential information. (Mot. at 12-13.)[8]

---

[8] Epic's reliance on *Weiss v. Sovereign Nation of Afghanistan*, 2023 WL 8530506 (N.D. Cal. Nov. 21, 2023), to support its public interest argument is puzzling. In *Weiss,* a case in which the United States government intervened, the court refused to seal the contract in a complaint alleging that Afghanistan breached a $100-million-dollar agreement with Weiss to allow Afghanistan to occupy Weiss's property. (*Id.* at *2.) While the movants claimed they faced an

Epic's cursory appeal to the public interest cannot overcome CureIS's compelling interest in honoring its contracts with its customers, maintaining the confidentiality of sensitive negotiations, and protecting the names of individual third-party employees who still have to work with Epic's Technical Coordinators and Best Friends Forever even after reporting their misconduct. Either way, the Court has already weighed these interests and found that CureIS's targeted redactions satisfied the "compelling reasons" standard. Neither the public interest nor anything in Epic's motion warrants revisiting that conclusion. Epic's motion should therefore be denied.

## CONCLUSION

For the foregoing reasons, Epic's motion to partially unseal CureIS's complaint should be denied.

DATED: July 18, 2025
QUINN EMANUEL URQUHART & SULLIVAN, LLP

By    /s/ Adam Wolfson
Adam Wolfson
*Attorneys for Plaintiff,*
*CureIS Healthcare, Inc.*

---

"exponential degree of spite and scandal if Exhibit 1 is made available to the Taliban and its cronies" (*id.*), there was no declaration filed in support of the motion to seal. The Court denied the sealing request because the agreement, signed by the Acting Minister of Defense of the Islamic Republic of Afghanistan, went to the heart of a matter of "significant" public importance. Unlike confidential contract negotiations in this commercial dispute, *Weiss* involved allegations implicating terrorism and foreign sovereigns, and a single claim based on a contract, the validity of which (and the court's jurisdiction to resolve that question), depended on whether the United States recognized the "The Sovereign Nation of Afghanistan" as a "foreign state" to be immune from jurisdiction. The public's interest in learning the factual basis for CureIS's complaint is already satisfied by the public version of the pleading, which lays out the claims, theories of harm, and alleged conduct in full. Unlike the sealing request in *Weiss*, which sought to conceal from public view the entirety of the agreement that formed the basis for the sole breach of contract claim in Weiss's complaint, the redactions CureIS seeks here do not obscure the "who, what, when, or why" of its case, and to the extent Epic seeks to analogize itself to the Taliban, CureIS takes no position—but the comparison only underscores the absurdity of Epic's argument.